# EXHIBIT

# 8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **BARKAN WIRELESS IP HOLDINGS, L.P.,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 2:21-cv-00034-JRG** |
| | **JURY TRIAL DEMANDED** |
| **T-MOBILE US, INC., T-MOBILE USA, INC., and NOKIA OF AMERICA CORPORATION,** | |
| **Defendants.** | |

## JOINT PROPOSED JURY INSTRUCTIONS[1,2]

---

[1] Submissions that are agreed to by both Barkan and Defendants are not highlighted.

Submissions proposed by Barkan that are not agreed to by Defendants are bracketed and highlighted in green. Submissions proposed by Defendants that are not agreed to by Barkan are bracketed and highlighted in yellow. The parties have entered their objections, explanations, citations, and commentary in footnotes only.

The parties reserve their respective rights to further object or propose new instructions based on their pending motions or further development at trial.

[2] Unless otherwise noted, the following instructions follow the form of instructions as used in *Optis Wireless Technology, LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG, Dkt. 490 (E.D. Tex. Aug. 12, 2020).

## I.   PRELIMINARY INSTRUCTIONS

### A.   General Preliminary Instructions[3]

I have some preliminary instructions that I want to give you before we start with the opening statements from the lawyers and then get on to the evidence.

You've now been sworn as the jurors in this case, and as the jury, you are the sole judges of the facts, and you alone will decide and determine all of those facts.

As the Judge, I will give you instructions on the law, decide questions of law that arise during the trial, and handle matters of evidence and procedure. And I'm also responsible for maintaining the flow of the trial and maintaining the decorum of the courtroom.

At the end of the evidence, I'll give you detailed instructions about the law to apply in deciding this case, and I'll give you a list of questions that you are then to answer.

This list of questions is called the verdict form. Your answers to these questions will need to be unanimous, and your answers will constitute the verdict in this case.

### B.   Background on Patents

Now, I want to briefly tell you about this case and what it's about. As you know, it is a patent case. I know that you saw the patent video this morning, but I want to give you some instructions here and on the record about patents and how one is obtained.[4]

A patent is a form of property called intellectual property. Like other forms of property, a patent can be bought or sold.  A violation of the patent-holder's rights is called infringement. The patent-holder may try to enforce a patent against persons or companies it believes to be infringers by a lawsuit filed in federal court. That's what we have before us in this case.[5]

---

[3] Trial Transcript at 8:22-9:16, *Rembrandt Wireless Technologies, LP v. Samsung Electronics Co.*, No. 13-cv-00213-JRG (E.D. Tex. Feb. 9, 2015), Dkt. 290 (modified).

[4] *Id.* at 9:17-22 (modified).

[5] *Id.* at 10:10-13.

Patents are issued by the United States Patent and Trademark Office, which is sometimes called the PTO and is part of the United States Government. A valid United States patent gives the patentholder the right for up to 20 years from the date the patent application is filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States or from importing it into the United States without the patentholder's permission.

During the term of the patent, however, if another person without the patent owner's permission makes, uses, sells, offers to sell, or imports into the United States something that is covered by the claims of the patent, then that person is said to infringe the patent. The patent owner may enforce a patent against persons or companies believed to be infringers in a lawsuit in Federal Court, as in this case.[6]

Everyone, however, has the right to use existing knowledge and principles. A patent cannot remove from the public the ability to use what was known or obvious before the invention was made or patent protection sought. Thus, to be entitled to patent protection, an invention must be new, useful, and non-obvious.[7] Now, let me tell a little bit about the parts of a patent. A patent includes two basic parts: the specification and the patent claims. The specification contains a written description of the claimed invention and explains what the invention is, how it works, how to make it, and how to use it. The written description is also often referred to as the specification of the patent.[8]

---

[6] Trial Transcript at 107:3-9, *VirnetX, Inc. v. Apple, Inc.*, No. 10-cv-00417-RWS (E.D. Tex. Oct. 29, 2012), Dkt. 608 (modified)

[7] *Id.* at 107:10-15.

[8] Trial Transcript at 10:25-11:3, *Rembrandt*, *supra* note 3 (modified).

The specification concludes or ends with one or more numbered sentences. These numbered sentences are the patent claims.[9] The claims may be divided into a number of parts referred to as claim limitations.[10]

The claims at the end of the patent are the main focus of a patent case because the claims are what define the patent owner's rights under the law; that is, the claims define what the patent owner may exclude others from doing during the term of the patent.[11]

The process of obtaining a patent is called patent prosecution. To obtain a patent, the applicant must file a patent application with the PTO. The PTO is an agency of the Federal Government and employs trained Examiners who review applications for patents.

In examining a patent application, the Examiner reviews certain information about the state of the technology at the time the applicant made the claimed invention. The PTO searches for and reviews this type of information that is publicly available or submitted by the applicant. This type of information is called prior art.[12]

The Examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time. Prior art is defined by law, and I will give you, at a later time, specific instructions as to what constitutes prior art.[13]

However, in general, prior art includes information that demonstrates the state of the technology that existed before the claimed invention was made or before the priority date of the patent.[14]

---

[9] *Id.* at 11:4-6.
[10] Trial Transcript at 110:12-13, *VirnetX, Inc. v. Apple, Inc.*, No. 10-cv-00417-RWS (E.D. Tex. Oct. 29, 2012), Dkt. 608 (modified).
[11] *Id.* at 110:20-24.
[12] Trial Transcript at 11:16-22, *Rembrandt*, *supra* note 3 (modified).
[13] *Id.* at 11:23-12:3.
[14] *Id.* at 12:4-7 (modified).

Now, a patent contains a certain list of prior art that the examiner has considered. And the items on this list of prior art, which the examiner has considered, are called the cited references.

Now, after a prior art search and an examination of the application, the examiner informs the applicant in writing of what the examiner has found and whether the examiner considers any claim to be patentable, and thus it would be allowed.

If the Examiner determines that the legal requirements for a patent all have been satisfied, then the Patent Examiner allows the claims, and the application then issues as a United States patent. [15]

The fact, ladies and gentlemen, that the PTO grants a patent does not necessarily mean that the invention claimed in the patent, in fact, deserves the protection of a patent.

Now, while a patent issued by the PTO is presumed valid under the law, a defendant accused of infringement has the right to argue here in Federal Court that a claimed invention in a patent is invalid. [16] It's your job as the jury to consider the evidence presented by the parties and determine independently and for yourselves whether or not the defendants have proven that the patent is invalid. [17]

### C.     The Positions of the Parties

To help you follow the evidence, I'll now give you a brief summary of the parties in this case and their positions. [18]

The Plaintiff is the party who brings the lawsuit, and the parties against whom the suit is brought are the Defendants. [19]   The Plaintiff in this case is Barkan Wireless IP Holdings, L.P.,

---

[15] Trial Transcript at 107:22-25, *VirnetX, Inc. v. Apple, Inc.*, No. 10-cv-00417-RWS (E.D. Tex. Oct. 29, 2012), Dkt. 608 (modified).
[16] *Id.* at 13:13-16 (modified).
[17] *Id.* at 13:17-21 (modified).
[18] Trial Transcript at 13:22-23, *Rembrandt*, *supra* note 3 (modified).
[19] *Id.* at 13:22-14:6 (modified).

which the parties and I may refer to simply as Barkan. The Defendants in this case are T-Mobile US, Inc., T-Mobile USA, Inc., and Nokia of America Corporation. The parties and I may often refer to the T-Mobile entities simply as T-Mobile, and the Nokia entity simply as Nokia.

Barkan alleges that T-Mobile and Nokia have infringed three patents, which I will refer to as the patents-in-suit. These three patents are United States Patent No. 8,014,284; United States Patent No. 8,559,312; and United State Patent No. 9,329,638. It is common practice to refer to a patent by its last three digits, such as the '284 patent, the '312 patent, and the '638 patent.[20]

Barkan contends that T-Mobile and Nokia are willfully infringing certain claims of the patents-in-suit by importing, making, using, selling, or offering for sale in the United States products that include Barkan's patented technology. The specific claims within the patents-in-suit that Barkan alleges T-Mobile and Nokia infringe are called the asserted claims.[21] Barkan contends that T-Mobile and Nokia owe it damages to compensate it for T-Mobile's and Nokia's infringement.[22]

---

[20] *Id.* at 14:7-16 (modified).
[21] *Id.* at 14:17-18 (modified).
[22] *Id.* at 15:7-9 (modified).

[T-Mobile and Nokia deny that Barkan owns the patents-in-suit.][23] T-Mobile and Nokia also deny that they have infringed Barkan's patents. In addition, T-Mobile and Nokia contend that the asserted claims are invalid as being obvious in light of the prior art.[24]

---

[23] **Barkan's position**: the question of standing is for the Court, not the jury. *See* Plaintiff's Motion *in Limine* No. 7, Dkt. 191. That includes resolution of any underlying factual disputes because there is no "overlap between the jurisdictional facts bearing on standing and the elements of the parties' respective claims of infringement and invalidity." *See Sec. Sols., LLC v. Amazon.com, Inc.*, No. 2:15-CV-1030-WCB, 2016 WL 6433776, at *3 (E.D. Tex. Oct. 31, 2016); *see also DBB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290–91 (Fed. Cir. 2008) (holding that a party was not entitled to have a jury decide facts related to ownership where the issue was "the interpretation of [an] employment agreement"); *Swinford v. Coil Tubing Tech., Inc.*, No. 4:19-CV-2301, 2019 WL 7877198, at *1 (S.D. Tex. Dec. 23, 2019) ("[A]nalysis of an employment agreement and patent assignment clauses to determine patent ownership . . . does not entitle the claimant to a jury trial on the issue of ownership."). The Accused Products "either infringed the patents or [they] did not, and the result will not change depending on" resolution of jurisdictional facts. *See Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, No. CV0110396MMMCWX, 2009 WL 10699035, at *15 (C.D. Cal. July 14, 2009) (question of standing was for the court because it "depend[ed] on facts and legal issues that are unrelated defendants' alleged infringement of plaintiffs' patents). Defendants' instruction is thus improper. **Defendants' position**: Defendants have presented clear evidence that Dr. Elad Barkan may never have owned the Asserted Patents, and thus that Barkan is not the correct owner of the Asserted Patents, and intend to file a motion requesting a ruling on this issue following completion of discovery from The Technion pursuant to a Hague request. Barkan has disputed this evidence and thus, unless the Court rules on the standing issue before trial, there is a question of fact as to whether Barkan owns the patents in suit. *See* Defendants' Response to Plaintiff's Motion *in Limine* No. 7. The Central District of California has put the question of ownership before the jury and instructed the jury on the law surrounding ownership. *See Carl Zeiss v. Nikon Corp.*, No. CV-17-03221-RGK (MRWx), Dkt. No. 511 & 512 (C.D. Cal. Jul 18, 2018). Furthermore, this Court has previously indicated that it believes ownership testimony can properly go before the jury. *See Mobile Telecommunications Techs., LLC v. ZTE (USA), Inc.*, No. 2:13-CV-946-JRG, 2016 U.S. Dist. LEXIS 184653, at *11 (E.D. Tex. 2016) (denying motion *in limine* and allowing the parties "to present argument and evidence concerning patent ownership and license defenses."); *see also id.* at Dkt. 236 at 69:9–18 ("[I]f the motion for summary judgment [of no standing] is denied, it will be because there are factual determinations that need to be made. And those may or may not be submitted to the jury. The jury may not ultimately answer the question as to whether there is or isn't standing, but they may have to make factual findings from which the Court can then answer the standing issue.").

[24] Trial Transcript at 15:10-16, *Rembrandt*, *supra* note 3 (modified).

T-Mobile and Nokia also contend that certain of the asserted claims are invalid because the patent specifications do not contain a sufficient written description of the invention and do not enable a person skilled in the art to make and use the invention.

T-Mobile and Nokia also deny that Barkan is entitled to any damages or other relief.

Your job is to decide whether or not any of the asserted claims have been infringed and whether or not any of the asserted claims of the patents-in-suit are invalid.[25]

If you decide that any claim of the patents-in-suit has been infringed and is not invalid, you'll then need to decide what amount of money damages are to be awarded to Barkan as compensation for such infringement.[26]

Now, my job in this case is to tell you what the law is, handle the rulings on evidence and procedure, and conduct the trial as efficiently and effectively as possible.[27]

In determining the law, it is specifically my job to determine the meaning of any of the claim language from within the asserted patents that needs interpretation. I've already determined the meaning of certain claim language in the patents-in-suit. You must accept the meanings that I give you and use those meanings when you decide whether any particular claim has or has not been infringed and whether or not any claim is invalid. You'll be given a document in a moment that reflects those meanings which I have determined.[28]

For any claim term for which I have not provided you with a definition, you should apply the plain and ordinary meaning. If I've provided you with the definition, however, you are to apply my definition to those terms throughout the case.[29]

---

[25] *Id.* at 15:22-24.
[26] *Id.* at 15:25-16:4 (modified).
[27] *Id.* at 16:5-8.
[28] *Id.* at 16:9-20.
[29] *Id.* at 16:21-17:1 (modified).

However, my interpretation of the language of the claims should not be taken as an indication by you that I have a personal opinion or any opinion at all regarding issues such as infringement and invalidity. Those issues are yours and yours alone to decide as the jury in this case. [30]

I'll provide you with more detailed instructions on the meaning of the claims before you retire to deliberate and reach your verdict. [31]

In deciding the issues that are before you, you will be asked to consider specific legal rules, and I'll give you an overview of those rules now. And then later, I will give you much more detailed instructions. [32]

[The first issue you're going to be asked to decide is whether Barkan owns the patents-in-suit. Barkan cannot assert infringement of the asserted patents unless it can establish it has what the law refers to as "standing to sue." Barkan bears the burden of establishing standing. Defendants contend that the Technion — Israel Institute of Technology (the "Technion") is the proper owner of the asserted patents because Dr. Barkan invented the subject matter of the asserted patents while he was attending the Technion on scholarship, and the Technion's IP Regulations state that such inventions are owned by the Technion.

To have standing, Barkan must prove, by a preponderance of the evidence, that Barkan is the sole owner of the asserted patents. In other words, Barkan must prove that the Technion is not the owner of the asserted patents.] [33]

---

[30] *Id.* at 17:2-7.
[31] *Id.* at 17:8-10.
[32] *Id.* at 17:11-15 (modified).
[33] **Barkan's position**: the question of standing is for the Court, not the jury. *See* Plaintiff's Motion *in Limine* No. 7, Dkt. 191. That includes resolution of any underlying factual disputes because there is no "overlap between the jurisdictional facts bearing on standing and the elements of the

The [first] [second] issue that you're going to be asked to decide is whether T-Mobile and Nokia have infringed any of the asserted claims. Infringement is assessed on a claim-by-claim basis, and Barkan must show by a preponderance of the evidence that a claim has been infringed. Accordingly, there may be infringement as to one claim but no infringement as to another claim.[34]

Barkan seeks to prove that the Accused Products directly infringe the asserted claims by what is called literal infringement. To prove literal infringement of a particular patent claim, Barkan must prove by a preponderance of the evidence that T-Mobile and Nokia made, used, sold,

---

parties' respective claims of infringement and invalidity." *See Sec. Sols., LLC v. Amazon.com, Inc.*, No. 2:15-CV-1030-WCB, 2016 WL 6433776, at *3 (E.D. Tex. Oct. 31, 2016); *see also DBB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290–91 (Fed. Cir. 2008) (holding that a party was not entitled to have a jury decide facts related to ownership where the issue was "the interpretation of [an] employment agreement"); *Swinford v. Coil Tubing Tech., Inc.*, No. 4:19-CV-2301, 2019 WL 7877198, at *1 (S.D. Tex. Dec. 23, 2019) ("[A]nalysis of an employment agreement and patent assignment clauses to determine patent ownership . . . does not entitle the claimant to a jury trial on the issue of ownership."). The Accused Products "either infringed the patents or [they] did not, and the result will not change depending on" resolution of jurisdictional facts. *See Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, No. CV0110396MMMCWX, 2009 WL 10699035, at *15 (C.D. Cal. July 14, 2009) (question of standing was for the court because it "depend[ed] on facts and legal issues that are unrelated defendants' alleged infringement of plaintiffs' patents). Defendants' instruction is thus improper. **Defendants' position**: Defendants have presented clear evidence that Dr. Elad Barkan never owned the Asserted Patents, and thus that Barkan is not the correct owner of the Asserted Patents, and intend to file a motion requesting a ruling on this issue following completion of discovery from The Technion pursuant to a Hague request. Barkan has disputed this evidence and thus, unless the Court rules on the standing issue before trial, there is a question of fact as to whether Barkan owns the patents in suit. *See* Defendants' Response to Plaintiff's Motion *in Limine* No. 7. The Central District of California has put the question of ownership before the jury and instructed the jury on the law surrounding ownership. *See Carl Zeiss v. Nikon Corp.*, No. CV-17-03221-RGK (MRWx), Dkt. No. 511 & 512 (C.D. Cal. Jul 18, 2018). Furthermore, this Court has previously indicated that it believes ownership testimony can properly go before the jury. *See Mobile Telecommunications Techs., LLC v. ZTE (USA), Inc.*, No. 2:13-CV-946-JRG, 2016 U.S. Dist. LEXIS 184653, at *11 (E.D. Tex. 2016) (denying motion *in limine* and allowing the parties "to present argument and evidence concerning patent ownership and license defenses."); *see also id.* at Dkt. 236 at 69:9–18 ("[I]f the motion for summary judgment [of no standing] is denied, it will be because there are factual determinations that need to be made. And those may or may not be submitted to the jury. The jury may not ultimately answer the question as to whether there is or isn't standing, but they may have to make factual findings from which the Court can then answer the standing issue.").

[34] Trial Transcript at 17:16-23, *Rembrandt*, *supra* note 3 (modified).

or offered for sale in the United States, or imported into the United States, a product or that they used a method meeting all the requirements of a claim of the Patents-in-Suit.[35]

I'll provide you with more detailed instructions on the requirements for infringement at the conclusion of the case.[36]

Another issue that you'll be asked to decide is whether the asserted claims are invalid. Invalidity is a defense to infringement. Therefore, even though the United States Patent and Trademark Office, or PTO, has allowed the asserted claims and even though a United States patent has issued by the PTO is presumed to be valid, you, the jury, must decide whether those claims are invalid after hearing the evidence presented during the trial in this case. A claim can be found to be invalid if T-Mobile and Nokia prove by clear and convincing evidence that it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time.[37]

You'll need to consider a number of questions in deciding whether the inventions claimed in the asserted patents are obvious. And I'll provide you with detailed instructions on these questions at the conclusion of the trial.[38]

Another way that a claim can be found to be invalid is that there may have been a lack of an adequate written description. A patent may be invalid if its specification does not describe the claimed invention in sufficient detail so that one skilled in the art can reasonably conclude that the inventor actually had possession of the invention they're claiming.

---

[35] *See* FBCA, Model Patent Jury Instruction A.4, May 2020, available at https://fedcirbar.org/IntegralSource/Model-Patent-Jury-Instructions.
[36] Trial Transcript at 188:14–16, *Optis Wireless Technology, LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG (E.D. Tex. Aug. 12, 2020), Dkt. 490.
[37] Trial Transcript, at 18:22-19:4, *Rembrandt*, *supra* note 3 (modified).
[38] Trial Transcript, at 19:5-9, *Rembrandt*, *supra* note 3 (modified).

If you decide that any of the asserted claims has been infringed and is not invalid, then you'll need to decide whether Defendant's infringement has been willful.[39]

You'll also need to decide what amount of money damages are to be awarded to Barkan to compensate it for the infringement.[40]

A damages award should put Barkan in approximately the same financial position that it would have been in had the infringement not occurred, and must be at least what Barkan would have received had it been paid a reasonable royalty for the use of its patent. I'll instruct you later on the meaning of a reasonable royalty.[41]

The damages you award are meant to compensate the patent-holder and not to punish the Defendants. You may not include in your award any additional amount as a fine or penalty above what is necessary to fully compensate the patent-holder for defendants' infringement. Additionally, damages cannot be speculative, and Barkan must prove the amount of its damages for the alleged infringement by a preponderance of the evidence. I'll give you more detailed instructions on the calculation of damages at the conclusion of the trial.[42]

However, please be aware that the fact I'm instructing you on damages does not mean that Barkan is or is not entitled to recover damages.

At the end of the trial, you will get a written charge that will have all of these instructions in it with much more detail than I am giving to you now. You will also have a verdict form that will ask you some very simple questions dealing with infringement and damages. Again, I'll give you more detailed instructions on all of these issues at the conclusion of the trial.

---

[39] Trial Transcript, at 190:18-21, *Optis Wireless Technology, LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG (E.D. Tex. Aug. 12, 2020), Dkt. 490.
[40] Trial Transcript at 19:20-25, *Rembrandt*, *supra* note 3 (modified).
[41] *Id.* at 20:1-7 (modified).
[42] *Id.* at 20:8-15.

### D.   Outline of Trial

Now, I want to give you a brief roadmap of how the trial is going to be structured. Very soon the lawyers for each side will make what is called an opening statement. Opening statements are intended to assist you in understanding the evidence. However, what the lawyers say during their opening statements is not evidence. It's only what they expect the evidence will show. What you should base your decision on is the evidence that you will hear and that comes into the record from the witness stand and from the exhibits that I admit into evidence. You will rely on this evidence in making your decision as to the verdict in this case.

After the opening statements, Barkan will have the opportunity to call its witnesses and put on its evidence. This is called the Plaintiff's case-in-chief.

When Barkan has finished putting on its witnesses and evidence, it will rest its case-in-chief, and then the Defendants have the opportunity to call their witnesses and put on their evidence. And that's called the Defendant's case-in-chief.

After the Defendants rest their case-in-chief, Barkan has the opportunity, if it chooses, to call what are called rebuttal witnesses to address the evidence that the Defendants have put on.

At the close of rebuttal evidence, all the evidence will have been presented, and at that time, I will give you instructions on the law that applies in this case. Those final instructions from the Court to the jury are called the Court's final charge to the jury.

After I have given you your final instructions, after all of the evidence is in, and after you have heard those final instructions, then you will hear the closing argument of the attorneys. After you have heard their closing arguments, then and only then will you retire to the jury room for the first time to start discussing the case, to deliberate, and to reach a verdict.

### E.  Evidence and the Role of the Jury[43]

Now, before we have the opening statements, I want to give you some general instructions on your role as members of the jury.

You're going to be hearing from a number of witnesses in this case, and I want you to keep an open mind while you're listening to the evidence and not decide any of the facts until you've heard all of the evidence.

While the witnesses are testifying, remember that you will be the ones who will have to decide the degree of credibility and believability to allocate to each of the witnesses.

So while the witnesses are testifying, you should be asking yourselves questions such as:

Does the witness come across to you as being truthful?

Does he or she have a reason not to tell the truth?

Does he or she have any personal interest in the outcome of the case?

Does the witness seem to have a good memory?

Did he or she have an opportunity and ability to observe accurately the things they testified about?

Did the witness appear to understand the questions clearly and answer them directly?

And, of course, does the witness's testimony differ from the testimony of any other witness, and if it does, how does it differ?

These are some of the kinds of things that you should be thinking about while you're listening to each and every witness.

---

[43] Trial Transcript, at 20:16-28:11, *Rembrandt, supra* note 3 (modified); Trial Transcript at 102:13-103:13, *VirnetX, Inc. v. Apple, Inc.*, No. 10-cv-00417-RWS (E.D. Tex. Oct. 29, 2012), Dkt. 608 (modified); Trial Transcript, at 192:4-199:19, *Optis Wireless Technology, LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG (E.D. Tex. Aug. 12, 2020), Dkt. 490.

Now, I also want to talk with you briefly about expert witnesses. When knowledge of a technical subject may be helpful to you in your role as jurors, a person who has special training or experience in that particular field—we may refer to them as an expert witness—is permitted to testify to you about his or her opinions on technical matters.

However, you're not required to accept an expert's or any other witness's opinions at all. It's up to you to decide whether you believe an expert witness, or any witness for that matter, whether that witness is correct or incorrect, or whether or not you want to believe what they say.

It's also up to you to determine whether or not any other witness in the case is correct or incorrect or whether you want to believe what they have to say. Those kinds of decisions, judging the credibility and believability of each and every witness in the case, are particularly within your area of responsibility as the jury.

I anticipate that there will be expert witnesses testifying in support of each side in this case, but it will be up to you to listen to their qualifications, and when they give an opinion and explain the basis for it, you will have to evaluate what they say and whether you believe it, and to what degree, if any, that you want to give it weight. Remember, judging and evaluating the credibility and believability of each and every witness is an important part of your job as jurors.

Now, during the trial, I also anticipate that testimony is going to be presented to you through what we call depositions. In trials such as this, it's tough to get every witness here physically at the same time. So lawyers from each side, prior to the trial, take the depositions of the witnesses.

In a deposition, they have a court reporter present; the witness is under oath, just as if he or she were present in the courtroom; and the parties, through their lawyers, ask them questions; and it's recorded.

Portions of those video recordings of these questions and answers may be played back to you as part of this trial so that you can see the witnesses and hear their testimony.

That deposition testimony is entitled to the same consideration and you are to evaluate its credibility and weight in the same way as if the witness had been present physically and had given their testimony from the witness stand in open court.

During trial, it's possible that the lawyers from time to time will make certain objections, and I'll make rulings on those objections. It's the duty of an attorney for each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not proper.

If I sustain an objection to a question addressed to a witness, then you must disregard the question entirely, and you may draw no inference from the wording of it or speculate about what the witness would have said, if I had permitted the witness to answer the question.

However, if I overrule the objection, then you should consider the question and the answer just as if no objection had been made.

Upon allowing testimony or other evidence to be introduced over the objection of an attorney, I as the judge do not, unless expressly stated, indicate an opinion as to the weight or effect of such evidence. As I stated before, you, the jury, are the sole judges of the credibility of all of the witnesses and the weight and effect to be given to all of the evidence.

You should know that the law of the United States permits a judge to comment to the jury on the evidence in a case, but such comments by the judge on the evidence are only an expression of the judge's opinion as to the evidence, and the jury may disregard such comments in their entirety, because as I've said before, you, the jury, are the sole judges of the facts, the credibility

16

of the witnesses, and how much weight you want to give to the testimony and the evidence in this case.

In a moment, each of you are going to be given a juror notebook. In that notebook are blank pages and a legal pad that you can use to take notes on. It's up to each member of the jury to decide whether or not you want to take notes during the trial, and if you do, how detailed you want those notes to be.

But, remember, those notes are for your own personal use. You have to rely on your memory of the evidence, which is why you should pay close attention to the testimony of each and every witness.

Whenever you leave each day, you should leave your juror notebooks on the table in the jury room. They should either be with you at all times in the courtroom or on the table in the jury room and not anywhere else.

The court reporter in front of me is here making a record in this case and taking down everything that's said. But a transcript or written version of what's been said will not be available for your use during your deliberations. The transcript is prepared in the event that there's an appeal to an appellate court to review this case after the trial is complete. On the other hand, any exhibits that are introduced into evidence, that would be documents or physical evidence, those will be available for you during your deliberations.

Now, until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. This includes your family and friends. Don't discuss the case even with the other jurors until all of the jurors are in the jury room actually deliberating at the end of the case.

Whenever you go to lunch or take a break, talk about anything you want to, but don't talk about the case. Likewise, don't talk about the case with anyone else. Every juror should hold themselves completely apart from any discussion about this case with anyone until we get to the end of the case and then only with your fellow jurors when you go back to deliberate.

If anyone should attempt to discuss the case with you or to approach you concerning the case, you should inform me immediately or my court staff, and you should not visit with them. Don't talk with any of the people involved in this case. By that I mean the parties, the witnesses, the attorneys, and anyone associated with the attorneys who will be trying this case. Please be mindful that the attorneys and the representatives of the clients and the witnesses are not going to engage you in conversation or be overly friendly during this process. That's so that they can comply with my instructions. And you're not to take that as a snub or rudeness or anything of that manner. That's simply what I require of them.

After the closing arguments of the attorneys, I will direct that you are to retire to the jury room.  Then and only then are you to discuss the case among yourselves in an attempt to reach a verdict and answer those questions that will be supplied to you in the verdict form.  Before that time,  you're not to discuss the case among yourselves.  Only do so after I've directed you to retire and deliberate on your verdict after all the evidence has been presented. And at no time are you to discuss the case with anyone until the time that you retire to deliberate.

Now, ladies and gentlemen, with those instructions, we're now going to hear opening statements from both parties in this case. The Plaintiff may proceed with its opening statement at this time.

## II.    FINAL INSTRUCTIONS

### A.    Introduction[44]

Members of the jury, you have now heard all the evidence in this case. I will now instruct you on the law that you must apply. Each of you will have your own copy of these instructions for your review when you retire to deliberate in a few minutes.

Accordingly, there's no need to take written notes on these instructions unless you particularly want to do so.

It is your duty to follow the law as I give it to you. On the other hand, as I've said previously, you, the jury, are the sole judges of the facts.

Do not consider any statement that I've made in the course of the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

You are about to hear closing arguments of the attorneys. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you.  You will take this verdict form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in the blanks in that form, date it, sign it, and then deliver it to the Court Security Officer.

Answer each question in the verdict form from the facts as you find them.  Do not decide who you think should win and then answer the questions to reach that result.  Your answers and your verdict must be unanimous.

---

[44] Trial Transcript at 14:14-15:18, *Rembrandt Wireless Technologies, LP v. Samsung Electronics Co.*, No. 13-cv-00213-JRG (E.D. Tex. Feb. 13, 2015), Dkt. 300 (modified).

## B.    Evidence[45]

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received into evidence, regardless of who may have introduced them.

You, the jurors, are the sole judges of the credibility of each and every witness and the weight and effect to be given to all the evidence in this case.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in light of common experience.

In other words, you may make deductions and may reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

Unless I instruct you otherwise, you may properly determine that the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if, after considering all the other evidence, you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence; that is, the proof of a chain of circumstances that indicates the existence or non-existence of certain other facts.

---

[45] Trial Transcript at 15:19-19:20, *Rembrandt Wireless Technologies, LP v. Samsung Electronics Co.*, No. 13-cv-00213-JRG (E.D. Tex. Feb. 13, 2015), Dkt. 300 (modified); Trial Transcript at 10:3-14:19, *VirnetX, Inc. v. Apple, Inc.*, No. 10-cv-00417-RWS (E.D. Tex. Nov. 6, 2012), Dkt. 617 (modified); Trial Transcript at 8:1-14:2, 15:1-16:9, *SimpleAir, Inc. v. Google, Inc.*, No. 14-cv-11-JRG (E.D. Tex. Oct. 12, 2015), Dkt. 371 (modified); Trial Transcript, at 955:14-962:17, *Optis Wireless Technology, LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG (E.D. Tex. Aug. 12, 2020), Dkt. 520.

As a general rule, the law makes no distinction between direct and circumstantial evidence but simply requires that you find the facts based on the evidence presented, both direct and circumstantial.

Now, the parties may have stipulated or agreed to certain facts in this case. When the lawyers for both sides stipulate as to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence and regard the fact as proven.

Certain documents were shown to you during the course of the trial as demonstratives. Demonstratives are a party's description, picture, or model to describe something involved in the trial. If your recollection of the evidence differs from the demonstrative, rely on your recollection.

Demonstratives are not evidence. However, a witness' testimony that references the demonstrative is evidence.

As I've told you previously, the attorneys in this case are acting as advocates for the parties, and they may object when they believe testimony or other evidence is being offered that they believe should not be admitted under the rules of the Court.

By allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence. As stated before, you are the sole judges of the credibility of all the witnesses and the weight and effect, if any, to be given to all of the evidence.

When the Court sustained an objection to a question addressed to a witness, you must disregard the question entirely, and you may draw no inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench and outside of your hearing or by calling a recess and talking to them while you were out of the courtroom.

This happens because often during a trial something comes up that does not involve the jury.  You should not speculate on what was said during such discussions out of your presence.

In deciding the facts, you may have to decide which testimony to believe and which not to believe. You are the sole judges of the credibility or believability of each witness and the weight to be given to his or her testimony.

In considering the testimony of any witness, you may take into account many factors, including the witness's relationship to the parties, the witness's interest, if any, in the outcome of the case, the witness's manner while testifying, the witness's opportunity to observe or acquire knowledge concerning the facts about which the witness has testified, any bias or prejudice the witness may have, the witness's candor, fairness, and intelligence, and the extent to which the witness's testimony has been supported or contradicted by other credible evidence.  You may, in short, accept or reject the testimony of any witness in whole or in part.

In determining the weight to be given to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact or whether there was evidence that at some other time the witness said or did something or failed to say or do something that was different from the testimony he or she gave at trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness is not telling the truth as he or she remembers it because people do from time to time forget some things or remember things inaccurately.  So if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or

simply a lapse in memory. And the significance of that may depend on whether it has to do with an important fact or only an unimportant detail.[46]

Certain testimony has been also presented to you through depositions. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. If a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition or through live video. Before this trial, attorneys representing the parties in this case questioned witnesses under oath in depositions. A court reporter and videographer were present and recorded the testimony. Deposition testimony is entitled to the same consideration as testimony given by a witness who appears in person at trial.

Accordingly, you should judge the credibility of and weigh the importance of deposition testimony to the best of your ability, just as if the witness had appeared and testified before you in open court.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—called an expert witness—is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it or not.

Remember that the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses have testified to the contrary, if, after considering all of the other evidence, you believe that single witness.[47]

---

[46] Trial Transcript at 12:23-14:2, *SimpleAir, Inc. v. Google, Inc.*, No. 14-cv-11-JRG (E.D. Tex. Oct. 12, 2015), Dkt. 371.

[47] Trial Transcript, at 959:14-:9, *Optis Wireless Technology, LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG (E.D. Tex. Aug. 12, 2020), Dkt. 520; Trial Transcript at 11:10-:15, *SimpleAir, Inc. v. Google, Inc.*, No. 14-cv-11-JRG (E.D. Tex. Oct. 12, 2015), Dkt. 371; Trial Transcript, at 18:9-:13, *Rembrandt Wireless Technologies, LP v. Samsung Electronics Co.*, No. 13-cv-00213-JRG (E.D. Tex. Feb. 13, 2015), Dkt. 300 (modified).

There are two standards of proof that you will apply in this case: preponderance of the evidence and clear and convincing evidence.

The Plaintiff in this case, Barkan, has the burden of proving infringement by a preponderance of the evidence. A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true. And this is sometimes talked about as being the greater weight and degree of credible testimony.

T-Mobile and Nokia bear the burden of proving invalidity by clear and convincing evidence.

Clear and convincing evidence means evidence that produces in your mind an abiding conviction that the truth of the party's factual contentions are highly probable.

Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard.

If the proof establishes in your mind, ladies and gentlemen, an abiding conviction in the truth of the matter, then the clear and convincing evidence standard has been met.

Now, these burdens of proof, neither one, are to be confused with the burden of proof called beyond a reasonable doubt, which is the burden of proof we apply in criminal cases.

The burden of proof, beyond a reasonable doubt, does not apply in this or any other civil case. You should not confuse clear and convincing evidence with evidence beyond a reasonable doubt. Clear and convincing evidence is not as high a burden as beyond a reasonable doubt, but it is a higher burden than the preponderance of the evidence.

Now, in determining whether any fact has been proved by a preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the

stipulations, the testimony of the witnesses, regardless of who called them, and all the evidence, all the exhibits received into evidence during the course of the trial, regardless of who may have produced them.

### C.   Contentions of the Parties[48]

As I did at the start of this case, I'll first give you a summary of each side's contentions in the case, and I'll then provide you with detailed instructions on what each side must prove to win on each of its contentions.

Barkan contends that T-Mobile and Nokia infringe claims 4, 15, 20, and 21 of the '284 Patent; claims 2, 3, and 9 of the '312 Patent; and claims 17, 20, and 27 of the '638 Patent.[49] Barkan seeks money damages from T-Mobile and Nokia for infringing its patents. Barkan has alleged that certain Nokia and T-Mobile femtocells infringe Barkan's patents. These femtocells are the 4G LTE CellSpot and the 4G LTE CellSpot v2. Sometimes in these instructions I'll refer to these products in shorthand as the accused products.

[T-Mobile and Nokia contend that Barkan does not own the patents-in-suit.][50] T-Mobile and Nokia each deny that they have infringed the asserted claims of the patents-in-suit. T-Mobile

---

[48] Trial Transcript at 19:21-21:3, *Rembrandt*, *supra* note 44 (modified); Trial Transcript at 14:3-25, *SimpleAir*, *supra* note 45 (modified); Trial Transcript, at 962:18-964:25, *Optis Wireless Technology, LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG (E.D. Tex. Aug. 12, 2020), Dkt. 520.

[49] Barkan reserves the right to contend that Defendants infringe claim 20 of the '284 Patent as well, if the Court grants Defendants' Motion for Partial Summary Judgment of No Pre-Suit Damages Based on Plaintiff's Failure to Comply with 35 U.S.C.§ 287 (Dkt. 124) and infringement of the '312 Patent and '638 Patent are no longer at issue.

[50] **Barkan's position**: the question of standing is for the Court, not the jury. *See* Plaintiff's Motion in *Limine* No. 7, Dkt. 191.  That includes resolution of any underlying factual disputes because there is no "overlap between the jurisdictional facts bearing on standing and the elements of the parties' respective claims of infringement and invalidity."  *See Sec. Sols., LLC v. Amazon.com, Inc.*, No. 2:15-CV-1030-WCB, 2016 WL 6433776, at *3 (E.D. Tex. Oct. 31, 2016); *see also DBB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290–91 (Fed. Cir. 2008) (holding that a party was not entitled to have a jury decide facts related to ownership where the issue was "the interpretation of [an] employment agreement"); *Swinford v. Coil Tubing Tech., Inc.*, No. 4:19-

and Nokia also contend that the asserted claims are invalid.  T-Mobile and Nokia each deny that they owe Barkan any damages in this case.

Your job is to decide [whether Barkan owns the patents-in-suit, and][51] whether T-Mobile and Nokia have infringed the asserted claims of the patents-in-suit and whether the asserted claims of the patents-in-suit are invalid.

---

CV-2301, 2019 WL 7877198, at *1 (S.D. Tex. Dec. 23, 2019) ("[A]nalysis of an employment agreement and patent assignment clauses to determine patent ownership . . . does not entitle the claimant to a jury trial on the issue of ownership.").  The Accused Products "either infringed the patents or [they] did not, and the result will not change depending on" resolution of jurisdictional facts.  *See Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, No. CV0110396MMMCWX, 2009 WL 10699035, at *15 (C.D. Cal. July 14, 2009) (question of standing was for the court because it "depend[ed] on facts and legal issues that are unrelated defendants' alleged infringement of plaintiffs' patents).  Defendants' instruction is thus improper. **Defendants' position**: Defendants have presented clear evidence that Dr. Elad Barkan never owned the Asserted Patents, and thus that Barkan is not the correct owner of the Asserted Patents, and intend to file a motion requesting a ruling on this issue following completion of discovery from The Technion pursuant to a Hague request. Barkan has disputed this evidence and thus, unless the Court rules on the standing issue before trial, there is a question of fact as to whether Barkan owns the patents in suit. *See* Defendants' Response to Plaintiff's Motion *in Limine* No. 7. The Central District of California has put the question of ownership before the jury and instructed the jury on the law surrounding ownership. *See Carl Zeiss v. Nikon Corp*., No. CV-17-03221-RGK (MRWx), Dkt. No. 511 & 512 (C.D. Cal. Jul 18, 2018). Furthermore, this Court has previously indicated that it believes ownership testimony can properly go before the jury. *See Mobile Telecommunications Techs., LLC v. ZTE (USA), Inc.*, No. 2:13-CV-946-JRG, 2016 U.S. Dist. LEXIS 184653, at *11 (E.D. Tex. 2016) (denying motion *in limine* and allowing the parties "to present argument and evidence concerning patent ownership and license defenses."); *see also id*. at Dkt. 236 at 69:9–18 ("[I]f the motion for summary judgment [of no standing] is denied, it will be because there are factual determinations that need to be made. And those may or may not be submitted to the jury. The jury may not ultimately answer the question as to whether there is or isn't standing, but they may have to make factual findings from which the Court can then answer the standing issue.").

[51] **Barkan's position**: the question of standing is for the Court, not the jury.  *See* Plaintiff's Motion *in Limine* No. 7, Dkt. 191.  That includes resolution of any underlying factual disputes because there is no "overlap between the jurisdictional facts bearing on standing and the elements of the parties' respective claims of infringement and invalidity." *See Sec. Sols., LLC v. Amazon.com, Inc.*, No. 2:15-CV-1030-WCB, 2016 WL 6433776, at *3 (E.D. Tex. Oct. 31, 2016); *see also DBB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290–91 (Fed. Cir. 2008) (holding that a party was not entitled to have a jury decide facts related to ownership where the issue was "the interpretation of [an] employment agreement"); *Swinford v. Coil Tubing Tech., Inc.*, No. 4:19-CV-2301, 2019 WL 7877198, at *1 (S.D. Tex. Dec. 23, 2019) ("[A]nalysis of an employment

Infringement and invalidity are separate questions and should be considered and answered separately. If you decide that any claim of the patents-in-suit has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Barkan to compensate it for such infringement. [

### D.     Ownership

Barkan cannot assert infringement of the asserted patents unless it can establish that it owns the patent-in-suit and can establish that it has what the law refers to as "standing to sue." Barkan bears the burden of establishing ownership and standing. Defendants contend that the Technion — Israel Institute of Technology (the "Technion") is the proper owner of the asserted patents because Dr. Barkan invented the subject matter of the asserted patents while he was attending the Technion

---

agreement and patent assignment clauses to determine patent ownership . . . does not entitle the claimant to a jury trial on the issue of ownership."). The Accused Products "either infringed the patents or [they] did not, and the result will not change depending on" resolution of jurisdictional facts. *See Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, No. CV0110396MMMCWX, 2009 WL 10699035, at *15 (C.D. Cal. July 14, 2009) (question of standing was for the court because it "depend[ed] on facts and legal issues that are unrelated defendants' alleged infringement of plaintiffs' patents). Defendants' instruction is thus improper. **Defendants' position**: Defendants have presented clear evidence that Dr. Elad Barkan never owned the Asserted Patents, and thus that Barkan is not the correct owner of the Asserted Patents, and intend to file a motion requesting a ruling on this issue following completion of discovery from The Technion pursuant to a Hague request. Barkan has disputed this evidence and thus, unless the Court rules on the standing issue before trial, there is a question of fact as to whether Barkan owns the patents in suit. *See* Defendants' Response to Plaintiff's Motion *in Limine* No. 7. The Central District of California has put the question of ownership before the jury and instructed the jury on the law surrounding ownership. *See Carl Zeiss v. Nikon Corp.*, No. CV-17-03221-RGK (MRWx), Dkt. No. 511 & 512 (C.D. Cal. Jul 18, 2018). Furthermore, this Court has previously indicated that it believes ownership testimony can properly go before the jury. *See Mobile Telecommunications Techs., LLC v. ZTE (USA), Inc.*, No. 2:13-CV-946-JRG, 2016 U.S. Dist. LEXIS 184653, at *11 (E.D. Tex. 2016) (denying motion *in limine* and allowing the parties "to present argument and evidence concerning patent ownership and license defenses."); *see also id.* at Dkt. 236 at 69:9–18 ("[I]f the motion for summary judgment [of no standing] is denied, it will be because there are factual determinations that need to be made. And those may or may not be submitted to the jury. The jury may not ultimately answer the question as to whether there is or isn't standing, but they may have to make factual findings from which the Court can then answer the standing issue.").

on scholarship, and the Technion's IP Regulations state that such inventions are owned by the Technion.

To have standing, Barkan must prove, by a preponderance of the evidence, that Barkan is the owner of the asserted patents. In other words, Barkan must prove that the Technion is not the owner of the asserted patents.][52]

---

[52] **Barkan's position**: the question of standing is for the Court, not the jury. *See* Plaintiff's Motion *in Limine* No. 7, Dkt. 191. That includes resolution of any underlying factual disputes because there is no "overlap between the jurisdictional facts bearing on standing and the elements of the parties' respective claims of infringement and invalidity." *See Sec. Sols., LLC v. Amazon.com, Inc.*, No. 2:15-CV-1030-WCB, 2016 WL 6433776, at *3 (E.D. Tex. Oct. 31, 2016); *see also DBB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290–91 (Fed. Cir. 2008) (holding that a party was not entitled to have a jury decide facts related to ownership where the issue was "the interpretation of [an] employment agreement"); *Swinford v. Coil Tubing Tech., Inc.*, No. 4:19-CV-2301, 2019 WL 7877198, at *1 (S.D. Tex. Dec. 23, 2019) ("[A]nalysis of an employment agreement and patent assignment clauses to determine patent ownership . . . does not entitle the claimant to a jury trial on the issue of ownership."). The Accused Products "either infringed the patents or [they] did not, and the result will not change depending on" resolution of jurisdictional facts. *See Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, No. CV0110396MMMCWX, 2009 WL 10699035, at *15 (C.D. Cal. July 14, 2009) (question of standing was for the court because it "depend[ed] on facts and legal issues that are unrelated defendants' alleged infringement of plaintiffs' patents). Defendants' instruction is thus improper. Defendants' proposed instruction also misstates the relevant burdens. Dr. Barkan is the sole inventor of the Patents-in-Suit and Plaintiff Barkan Wireless is the record assignee and owner, as shown by assignments recorded with the PTO and produced in this case. Legal title to the Asserted Patents thus presumptively rests with Barkan Wireless and ***Defendants*** must overcome this presumption to defeat Barkan Wireless's standing. *See, e.g.*, *Kaist IP US LLC v. Samsung Elecs. Co.*, No. 2:16-CV-01314-JRG, 2018 WL 10498168, at *4 (E.D. Tex. Sept. 6, 2018) ("As applied here, two undisputed facts are critical to the standing analysis: (1) Professor Lee is the sole inventor of the '055 Patent, and (2) KAIST IP US is the record assignee and owner of the '055 Patent. Legal title to the '055 Patent presumptively rests with KAIST as the named assignee and uncontested owner of the patent, and Defendants must overcome this presumption to defeat KAIST's standing." (cleaned up)). Finally, Defendants' instruction is improperly one-sided insofar as it sets out Defendants' contentions only. Barkan reserves the right to propose an instruction on standing if the Court determines that any issues relevant to standing are for the jury. **Defendants' position**: Defendants have presented clear evidence that Dr. Elad Barkan never owned the Asserted Patents, and thus that Barkan is not the correct owner of the Asserted Patents, and intend to file a motion requesting a ruling on this issue following completion of discovery from The Technion pursuant to a Hague request. Barkan has disputed this evidence and thus, unless the Court rules on the standing issue before trial, there is a question of fact as to whether Barkan owns the patents in suit. *See* Defendants' Response to

### E.     Claims[53]

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I'll now give you more detailed instructions about the patent laws that relate to this case.

Before you can decide many of the issues in this case, you will need to understand the role of patent claims. The patent claims are the numbered sentences at the end of the patent. The claims are important because it is the words of the claims that define what a patent covers.

The figures and text in the rest of the patent provide a description and/or examples of the invention and provide context for the claims, but it is the claims that define the breadth of the patent's coverage.

Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers collectively depends upon what each of its claims covers.

---

Plaintiff's Motion *in Limine* No. 7. The Central District of California has put the question of ownership before the jury and instructed the jury on the law surrounding ownership. *See Carl Zeiss v. Nikon Corp.*, No. CV-17-03221-RGK (MRWx), Dkt. No. 511 & 512 (C.D. Cal. Jul 18, 2018). Furthermore, this Court has previously indicated that it believes ownership testimony can properly go before the jury. *See Mobile Telecommunications Techs., LLC v. ZTE (USA), Inc.*, No. 2:13-CV-946-JRG, 2016 U.S. Dist. LEXIS 184653, at *11 (E.D. Tex. 2016) (denying motion *in limine* and allowing the parties "to present argument and evidence concerning patent ownership and license defenses."); *see also id.* at Dkt. 236 at 69:9–18 ("[I]f the motion for summary judgment [of no standing] is denied, it will be because there are factual determinations that need to be made. And those may or may not be submitted to the jury. The jury may not ultimately answer the question as to whether there is or isn't standing, but they may have to make factual findings from which the Court can then answer the standing issue.").

[53] Trial Transcript at 21:4-23:18, *Rembrandt*, *supra* note 44 (modified); Trial Transcript, at 965:25-, *Optis Wireless Technology, LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG (E.D. Tex. Aug. 12, 2020), Dkt. 520.

A claim sets forth in words a set of requirements. Each patent claim sets forth in words a set of requirements in a single sentence. The requirements of a claim are usually divided into parts or steps called limitations or elements.

If a device satisfies each of the requirements in the claim's sentence, then it is said that the device is covered by the claim or falls under the claim, meaning that it infringes the claim.

For example, a claim that covers an invention of a table may recite a tabletop, four legs, and the glue that secures the legs to the tabletop. In this example, the tabletop, legs, and glue are each separate limitations of the claim.[54]

There can be several claims in a patent. A claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by-claim basis.

In patent law, the requirements of a claim are often referred to as the claim elements, or they're sometimes called the claim limitations.

When a product meets all of the requirements of a claim, it is said it meets all of its limitations or all of its elements, and the claim is said to cover that product, and that product is said to fall within the scope of that claim.

In other words, a claim covers a product where each of the claim elements or limitations is present in that product.

If a product is missing even one limitation or element of a claim, the product is not covered by that claim.

If the product is not covered by the claim, the product does not infringe the claim.

---

[54] Trial Transcript at 22:7-:11, *Rembrandt*, *supra* note 44 (modified).

You first need to understand each claim in order to decide whether or not there is infringement of a given claim and to decide whether or not the claim is invalid.

The first step is to understand the meaning of the words used in the patent claim. The law says that it's my role to define the terms of the claims, and it's your role to apply my definitions to the issues that you are asked to decide in this case.

Therefore, as I explained at the start of the case, I have determined the meaning of certain claim terms, and I have provided to you those claim term definitions. These definitions are in your juror notebooks. You must accept my definitions of these words in the claims as being correct.

It is your job to take these definitions that I have supplied and apply them to the issues that you are asked to decide, including both the issues of infringement and invalidity. My interpretation of the claim terms should not be taken by you as an indication that I have any view regarding the issues of infringement or invalidity. The decisions regarding these issues, infringement and invalidity, are yours to make, ladies and gentlemen.

For the claim terms that I have not construed or defined, you are to use the ordinary and accustomed meaning of the terms as understood by one of ordinary skill in the art, which is to say in the field of technology of the patent at the time of the invention.

## F.  Infringement

I will now instruct you on how to decide whether or not T-Mobile and Nokia have infringed the asserted claims of the patents-in-suit.[55]

A patent claim may be infringed directly or indirectly. In order to prove infringement, Barkan must prove that the requirements for direct infringement or indirect infringement are met

---

[55] Trial Transcript at 16:10-11, *SimpleAir*, *supra* note 45 (modified).

by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of one or more of these types of infringement have been proved.

### 1.     Direct Infringement

Here, Barkan asserts that T-Mobile and Nokia have directly infringed the asserted claims of the patents-in-suit. T-Mobile and Nokia are liable for direct infringement if you find that Barkan has proven that it is more likely than not that T-Mobile and Nokia made, imported, used, sold, or offered for sale a product or process that meets all the requirements of at least one of the asserted claims and did so without permission of Barkan during the time the patents-in-suit were in force.[56]

In order to prove infringement, Barkan must prove that each of the requirements for infringement is met by a preponderance of the evidence. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.[57]

You must compare each of the asserted claims to each of the accused products to determine whether all the requirements of any asserted claim are met. In doing so, you should not compare the accused products to any specific example set out in the patents.[58]

If you find that the accused product includes each element of the claim, then that product directly infringes that claim, even if such product contains additional elements that are not recited in the claim.[59]

The only correct comparison is to compare the accused products with the language of the asserted claims themselves, using the meaning that I have given you.[60]

---

[56] Trial Transcript at 23:19-24:2, *Rembrandt*, *supra* note 44 (modified).
[57] *Id*. at 24:3-:8.
[58] *Id*. at 24:9-:14.
[59] *Id*. at 24:15-:18.
[60] *Id*. at 24:19-:22.

Patent claims may exist in two forms referred to as independent claims and dependent claims.[61]

An independent claim does not refer to any other claim of the patent.  An independent claim sets forth all the requirements that must be met in order to be covered by that claim.  It is not necessary to look to any other claim to determine what an independent claim covers and whether it is infringed.[62]

A dependent claim is a claim that refers to at least one other claim of the patent.  A dependent claim incorporates all of the elements of the claim to which it refers, as well as the additional elements recited in the dependent claim itself.[63]

To establish literal infringement of a dependent claim, Barkan must show by a preponderance of the evidence that T-Mobile's and Nokia's accused products include each and every element of the dependent claim, as well as the limitations of the independent claim on which it depends.[64]

If you find that the independent claim on which the dependent claim depends is not literally infringed, then you cannot find that the dependent claim is literally infringed.[65]

A party can directly infringe a patent without knowing of the patent or without knowing that what the party is doing is patent infringement. A patent may also be directly infringed even

---

[61] *Id.* at 24:23-:24.
[62] *Id.* at 24:25-25:5.
[63] *Id.* at 25:6-:10.
[64] *Id.* at 25:11-:16 (modified).
[65] *Id.* at 25:17-:20.

though the accused infringer believes in good faith that what it is doing is not infringement of the patent. [Infringement does not require proof that a party copied the asserted claim.][66]

### I.   Willful Infringement[67]

In this case, Barkan also contends that T-Mobile willfully infringed the Asserted Claims of the '284 Patent at least after March 14, 2017, and willfully infringed the Asserted Claims of the '312 and '638 Patents at least after January 1, 2018.[68]   Barkan contends that Nokia willfully infringed the Asserted Claims of the '284 Patent after February 4, 2021.  If you decide that T-Mobile and Nokia have infringed a valid Asserted Claim, you must go on and address the additional issue of whether or not this infringement was willful as to each defendant.[69] Barkan must prove willfulness by a preponderance of the evidence.

You may not determine that the infringement was willful just because T-Mobile and/or Nokia knew of an Asserted Patent and infringed it. [However, you may find that Defendants

---

[66] **Barkan's authority**: American Intellectual Property Law Association Model Patent Jury Instructions § 3.1 (2018) (modified); Trial Transcript at 17:8-16, *SimpleAir*, *supra* note 44 (modified); Trial Transcript at 22:25-23:5, *VirnetX*, *supra* note 45 (modified). **Defendants' position**: This language is unnecessary, and this instruction is not present in several of this Court's recent cases. *See e.g.*, Trial Transcript, *Optis Wireless Technology, LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG, Dkt. 520 (E.D. Tex. Aug. 12, 2020); Trial Transcript, *PPS Data, LLC v. Jack Henry & Associates, Inc.*, No. 2:18-cv-00007-JRG, Dkt. 175 (E.D. Tex. Sep. 13, 2019); Trial Transcript, *United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv-00245-JRG, Dkt. 335 (E.D. Tex. Nov. 7, 2019).

[67] Adapted from The Federal Circuit Bar Association Model Patent Jury Instructions, Instruction No. B.3.10 (May 2020); 35 U.S.C. § 284; *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016); *3rd Eye Surveillance, LLC v. e-Watch Corp.*, No. 6:14-cv-725, Final Jury Instructions, Dkt. 204 at 9–10 (Feb. 2, 2017); *Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*, No. 2:18-cv-14-JRG-RSP, Jury Instructions, Dkt. 345, Tr. at 42–43 (July 11, 2019).

[68] T-Mobile does not object to this instruction if Defendants' Motion for Partial Summary Judgment of No Pre-Suit Damages Based on Plaintiff's Failure to Comply with 35 U.S.C. § 287 (Dkt. 124) is denied.  If such motion is granted, however, T-Mobile contends that the relevant time period for assessing alleged willful infringement as to T-Mobile begins on the date of Barkan's Original Complaint (Dkt. 1)—February 2, 2021.

[69] **Defendants' position**: For inclusion depending on outcome of Defendants' Motion for Partial Summary Judgment of No Pre-Suit Damages Based on Plaintiff's Failure to Comply with 35 U.S.C. § 287. ECF. No. 124.

34

willfully infringed if you find that T-Mobile and/or Nokia acted egregiously, willfully, or wantonly. You may find Defendants' actions were egregious, willful, or wanton if T-Mobile and/or Nokia acted in reckless or callous disregard of, or with indifference to the rights of Barkan.][70] [In order to prove willful infringement, Barkan must prove that Defendants knew or believed, or it was so obvious that they should have known, that there was a high likelihood that they were infringing a valid patent. You may find that T-Mobile and/or Nokia willfully infringed if you find that their respective behavior was egregious, willful, or wanton if it acted in reckless or callous disregard of, or with indifference to the rights of Barkan.][71] A defendant is indifferent to the rights of another when it proceeds in disregard of a high or excessive danger of infringement that was known to it or was apparent to a reasonable person in its position.

Your determination, ladies and gentlemen, of willfulness should incorporate the totality of the circumstances based on all the evidence that's been presented during the trial. And willfulness can be established by circumstantial evidence.

[Knowledge of the existence of a patent can be relevant to the question of willful infringement. For example, if Defendants knew of a patent, you can take this into account when

---

[70] **Barkan's authority**: Trial Transcript, at 978:11–:15, *Optis Wireless Technology, LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG (E.D. Tex. Aug. 12, 2020), Dkt. 520. **Defendants' position**: Barkan is comingling the willfulness question for T-Mobile and Nokia even though there are unquestionably different facts for each company. Willfulness should be determined for T-Mobile and Nokia separately, so using "they" is misleading to the jury.

[71] **Defendants' position**: *Sprint v. TWC*, Case No. 11-cv-0686-JWL (D. Kan. Mar. 3, 2017) (D.I. 447) at 31; *see also WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016) (holding that "Halo did not disturb the substantive standard for the second prong of *Seagate*, subjective willfulness" and noting that under the second prong of *Seagate*, subjective willfulness requires "proof that the defendant acted despite a risk of infringement that was 'either known or so obvious that it should have been known to the accused infringer'").

<mark>considering willfulness.</mark>]⁷² If you decide that any infringement was willful, that decision should not affect any damage award you give. Rather, I will take your willfulness finding into account later.⁷³

### G.    Invalidity—Generally

I will now instruct you on the rules that you follow in deciding whether or not T-Mobile and Nokia have proven that the asserted claims of the patents-in-suit are invalid.⁷⁴

An issued patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office acted correctly in issuing the patent. To prove that any claim of a patent is invalid, T-Mobile and Nokia must persuade you by clear and convincing evidence that the claim is invalid.⁷⁵

This presumption of validity extends to all United States patents that are issued by the PTO.⁷⁶

---

[72] **Barkan's position:** Barkan's proposed language is taken from this Court's recent instructions on the issue of willfulness and is not an "extra instruction," as Defendants contend. *See* Trial Transcript, at 876:2-:3, *Solas OLED Ltd. v. Samsung Display Co. Ltd.*, 2:19-cv-152-JRG, Final Jury Instructions, (E.D. Tex. Mar. 8, 2021), Dkt. 354; Trial Transcript, at 978:25–979:7, *Optis Wireless Technology, LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG (E.D. Tex. Aug. 12, 2020), Dkt. 520. In fact, the Court gave this instruction in those cases along with the agreed language that Defendants contend would confuse the jury, belying their contention that the instructions are somehow confusing or inconsistent. **Defendants' position**: Knowledge of a patent alone is insufficient for willfulness, and the Court's other instructions already make clear what the jury can and should consider in determining willfulness. In fact, earlier in these instructions instructs to Jury to not be focused solely on knowledge. *See* page 33 ("You may not determine that the infringement was willful just because T-Mobile and/or Nokia knew of an Asserted Patent and infringed it.") It could be confusing to the jury to be told that they should not just be focused on knowledge and then receive all this extra instruction on willfulness. Finally, this Court has previously not included this instruction in its willfulness instructions. *See e.g.*, Trial Transcript, *United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv-00245-JRG, Dkt. 335 (E.D. Tex. Nov. 7, 2019).

[73] *Solas OLED Ltd. v. Samsung Display Co. Ltd.*, 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 876:1–:7 (E.D. Tex. Mar. 8, 2021) (modified).

[74] Transcript at 22:25-23:2, *SimpleAir*, supra note 45 (modified).

[75] *Id.* at 23:3-8.

[76] Trial Transcript at 26:4-7, *Rembrandt*, *supra* note 44.

Even though the Patent Office Examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid.[77]

In making your determination as to whether a patent claim is valid or invalid, you must consider each patent and each of the claims of a patent separately and individually, as you did when you considered whether the claim is infringed or not.[78]

If clear and convincing evidence demonstrates that a claim in a given patent fails to meet the requirements of the patent laws, then that claim is invalid.[79]

Like infringement, validity is determined on a claim-by-claim basis. You must determine separately for each claim whether that claim is invalid. Claims are construed the same way for determining invalidity as for determining infringement.[80]

In patent law, a previous device, system, method, publication or patent that predates the claimed invention is generally called prior art or a prior art reference.[81]

To be prior art, the item or reference must have been made, known, used, published, patented, or filed as a patent application before the priority date of the patents-in-suit.[82]

As I've previously explained to you, to obtain a patent, one must first file an application with the PTO, the United States Patent and Trademark Office.

The process of obtaining a patent is called patent prosecution, and the applications submitted to the PTO includes within it what is called the specification.

---

[77] Trial Transcript at 23:9-11, *SimpleAir*, supra note 45 (modified).
[78] *Id.* at 23:12-16.
[79] *Id.* at 23:17-19.
[80] *Id.* at 26:11-:118.
[81] *Solas OLED Ltd. v. Samsung Display Co. Ltd.*, 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 877:9–:12 (E.D. Tex. Mar. 8, 2021).
[82] Trial Transcript at 24:20–23, *PPS Data, LLC v. Jack Henry & Associates, Inc.*, No. 2:18-cv-00007-JRG, Dkt. 175 (E.D. Tex. Sep. 13, 2019).

The specification is required to contain a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it.

### H.    Obviousness

T-Mobile and Nokia contend that all of the asserted claims of the patents-in-suit are invalid as being obvious in light of the prior art.[83]

Even though an invention may not have been identically disclosed or described in a single prior art reference before it was made by an inventor in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made or before the priority date of the patent.[84]

T-Mobile and Nokia may establish that a patent claim is invalid by showing by clear and convincing evidence that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made.[85]

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of technology of the patent that someone would have had at the time the claimed invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention.[86] The skill of the actual inventor is [irrelevant][not

---

[83] Trial Transcript at 24:12-15, *SimpleAir*, *supra* note 45 (modified).
[84] Trial Transcript at 26:18-23, *SimpleAir*, *supra* note 45.
[85] Trial Transcript, at 26:24-27:3, *SimpleAir*, *supra* note 45.
[86] Trial Transcript at 27:4-9, *SimpleAir*, *supra* note 45.

==necessarily relevant==][87] because inventors may possess something that distinguishes them from workers of ordinary skill in the art.[88]

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on the building blocks of prior art.[89]

In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that, at the time of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field of the technology of the patent to combine the known elements in a way the claimed invention does, taking into account such factors as:

(1)    whether the claimed invention was merely the predictable result of using prior art elements according to their known functions;

---

[87] **Barkan's position**: This language is taken verbatim from recent instructions given by the Court. *See Solas OLED Ltd. v. Samsung Display Co. Ltd.*, 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 885:12–:15 (E.D. Tex. Mar. 8, 2021). **Defendants' position**: The Federal Circuit has held that the actual skill of the inventor is "irrelevant" to the inquiry of what a PHOSITA would know. *Bristol-Myers Squibb Co. v. Teva Pharm. USA, Inc.*, 752 F.3d 967, 978 (Fed. Cir. 2014) (holding that "obviousness is determined entirely with reference to a hypothetical 'person having ordinary skill in the art'" and **the "actual inventor's skill is irrelevant" to the obviousness inquiry**) (citing *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985)) (emphasis added); *see also Standard Oil Co.*, 774 F.2d at 454 (Fed. Cir. 1985) ("The actual inventor's skill is irrelevant to the inquiry, and this is for a very important reason. The statutory emphasis is on a person of *ordinary* skill. Inventors, as a class, according to the concepts underlying the Constitution and the statutes that have created the patent system, possess something -- call it what you will -- which sets them apart from the workers of *ordinary* skill, and one should not go about determining obviousness under § 103 by inquiring into what patentees (*i.e.*, inventors) would have known or would likely have done, faced with the revelations of references.") (emphasis in original).

[88] *Solas OLED Ltd. v. Samsung Display Co. Ltd.*, 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 885:12–:15 (E.D. Tex. Mar. 8, 2021).

[89] Trial Transcript at 27:10-14, *SimpleAir*, *supra* note 45.

(2)     whether the claimed invention provides an obvious solution to a known problem in the relevant field;

(3)     whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

(4)     whether the prior art teaches away from combining elements in the claimed invention;

(5)     whether it would have been obvious to try the combinations of elements such as when there is a design need or market pressure to solve a problem, and there are a finite number of identified, predictable solutions; and

(6)     whether the change resulted more from design incentives or other market forces.[90]

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight; that is, consider only what was known at the time of the invention.[91]

In making these assessments, you may take into account any objective evidence, sometimes called secondary considerations, that may have existed at the time of the invention that may shed light on the obviousness or not of the claimed invention, such as:

(1)     whether the invention was commercially successful as a result of the merits of the claimed invention, rather than the result of design needs or market pressure, advertising, or similar activities;

(2)     whether the invention satisfied a long-felt need;

(3)     whether others had tried and failed to make the invention;

---

[90] Trial Transcript at 27:15-28:12, *SimpleAir*, *supra* note 45 (modified).
[91] Trial Transcript at 28:16-19, *SimpleAir*, *supra* note 45 (modified).

(4)      whether others invented the invention at roughly the same time;

(5)      whether others copied the invention;

(6)      whether there were changes or related technologies or market needs contemporaneous with the invention;

(7)      whether the invention achieved unexpected results;

(8)      whether others in the field praised the invention;

(9)      whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

(10)     whether others sought or obtained rights to the patent from the patent-holder; and

(11)     whether the inventor proceeded contrary to accepted wisdom in the field.[92]

Now, no one factor alone is dispositive, and you must consider the obviousness or non-obviousness of the inventions as a whole. These factors are relevant only if there is a connection or nexus between the factor and the asserted claims of the asserted patents. Even if you conclude that some of the above indicators have been established, those factors should be considered along with all other evidence in the case in determining whether Defendants have proven that the claimed invention would have been obvious.

Several times in these instructions, I have referred to a person of ordinary skill in the field of the invention. It is up to you to decide the level of ordinary skill in the field of the invention. You should consider all the evidence introduced at trial, including but not limited to:

(1)      the levels of education and experience of the inventor or other persons actively working in the field;

---

[92] Trial Transcript at 28:20-29:24, *SimpleAir*, *supra* note 45 (modified).

41

(2)     the types of problems encountered in the field;

(3)     the nature of prior art solutions to those problems;

(4)     the rapidity of innovation in the field being made; and

(5)     the sophistication of the technology involved,[93]

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art.[94]

The scope and content of prior art for deciding whether the invention was obvious includes prior art in the same field as the claimed invention, regardless of the problem addressed by the item or reference, and prior art from different fields that a person of ordinary skill in the art using common sense might combine, if familiar, so as to solve the problem, like fitting together the pieces of a puzzle.[95]

T-Mobile and Nokia must prove by clear and convincing evidence that a patent claim was obvious.

## I.     Invalidity: Written Description[96]

The patent law contains certain requirements for the part of the patent called the specification. The written description requirement is designed to ensure that the inventor was in

---

[93] *Id.* at 29:25-30:16 (modified).

[94] *Id.* at 30:17-19.

[95] *Id.* at 30:20-31:2.

[96] This instruction is taken from the Adapted from The Federal Circuit Bar Association Model Patent Jury Instructions, Instruction No. B.4.2a (May 2020), *available at* https://fedcirbar.org/IntegralSource/Model-Patent-Jury-Instructions, and relies on the following case authority: *Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1373-79 (Fed. Cir. 2017), *cert. denied*, 139 S. Ct. 787 (2019); *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285 (Fed. Cir. 2014); *Novozymes A/S v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1349-51 (Fed. Cir. 2013); *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1287 (Fed. Cir. 2012); *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1352 (Fed. Cir. 2010) (en banc) ("While the description requirement does not demand any particular form of disclosure, or that the specification recite the claimed invention in haec verba, a description that merely renders

possession of the full scope of claimed invention as of the patent's effective filing date. Defendants contend that claim 4 of Barkan's '284 patent is invalid because the specification of the '284 patent does not contain an adequate written description of the invention. To succeed, Defendants must show by clear and convincing evidence that a person having ordinary skill in the field reading the patent specification as of the effective filing date of August 12, 1999 would not have recognized that it describes the full scope of the invention as it is finally claimed in claim 4 of the '284 patent. If a patent claim lacks adequate written description, it is invalid.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the effective filing date. The specification must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently.

A claimed element is disclosed inherently if a person having ordinary skill in the field as of the effective filing date would have understood that the element is necessarily present in what the specification discloses. It is not sufficient that the specification discloses only enough to make the claimed invention obvious to the person having ordinary skill.

---

the invention obvious does not satisfy the requirement." (internal citations omitted)); *PowerOasis, Inc. v. T-MOBILE USA, INC.*, 522 F. 3d 1299, 1306 (Fed. Cir. 2008); *Lizard Tech., Inc. v. Earth Res. Mapping Inc.*, 424 F.3d 1336, 1344- 45 (Fed. Cir. 2005); *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 929 (Fed. Cir. 2004); *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1253-55 (Fed. Cir. 2004); *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956 (Fed. Cir. 2002); *Purdue Pharma L.P. v. Faulding, Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000); *Lampi Corp. v. Am. Power Prods., Inc.*, 228 F.3d 1365, 1377-78 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998) ("In order for a disclosure to be inherent, however, the missing descriptive matter must necessarily be present in the parent application's specification such that one skilled in the art would recognize such a disclosure."); *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1568 (Fed. Cir. 1997); *In re Alton*, 76 F.3d 1168, 1172 (Fed. Cir. 1996).

The written description does not have to be in the exact words of the claim. The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification. Adequate written description does not require either examples or an actual reduction to practice of the claimed invention. However, a mere wish or plan for obtaining the claimed invention is not adequate written description. Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.

### J.   Invalidity: Enablement[97]

The patent law contains certain requirements for the part of the patent called the specification. Defendants contend that claim 4 of the '284 patent is invalid because the specification does not contain a sufficiently full and clear description of how to make and use the

---

[97] This instruction is taken from the Adapted from The Federal Circuit Bar Association Model Patent Jury Instructions, Instruction No. B.4.2a (May 2020), *available at* https://fedcirbar.org/IntegralSource/Model-Patent-Jury-Instructions, and relies on the following case authority: *Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1373-79 (Fed. Cir. 2017), *cert. denied*, 139 S. Ct. 787 (2019); *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc*., 759 F.3d 1285 (Fed. Cir. 2014); *Novozymes A/S v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1349-51 (Fed. Cir. 2013); *Streck, Inc. v. Research & Diagnostic Sys., Inc*., 665 F.3d 1269, 1287 (Fed. Cir. 2012); *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co*., 598 F.3d 1336, 1352 (Fed. Cir. 2010) (en banc) ("While the description requirement does not demand any particular form of disclosure, or that the specification recite the claimed invention in haec verba, a description that merely renders the invention obvious does not satisfy the requirement." (internal citations omitted)); *PowerOasis, Inc. v. T-MOBILE USA, INC*., 522 F. 3d 1299, 1306 (Fed. Cir. 2008); *Lizard Tech., Inc. v. Earth Res. Mapping Inc*., 424 F.3d 1336, 1344- 45 (Fed. Cir. 2005); *Univ. of Rochester v. G.D. Searle & Co*., 358 F.3d 916, 929 (Fed. Cir. 2004); *Chiron Corp. v. Genentech, Inc*., 363 F.3d 1247, 1253-55 (Fed. Cir. 2004); *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956 (Fed. Cir. 2002); *Purdue Pharma L.P. v. Faulding, Inc*., 230 F.3d 1320, 1323 (Fed. Cir. 2000); *Lampi Corp. v. Am. Power Prods., Inc*., 228 F.3d 1365, 1377-78 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp*., 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *Tronzo v. Biomet, Inc*., 156 F.3d 1154, 1159 (Fed. Cir. 1998) ("In order for a disclosure to be inherent, however, the missing descriptive matter must necessarily be present in the parent application's specification such that one skilled in the art would recognize such a disclosure."); *Regents of the Univ. of Cal. v. Eli Lilly & Co*., 119 F.3d 1559, 1568 (Fed. Cir. 1997); *In re Alton*, 76 F.3d 1168, 1172 (Fed. Cir. 1996).

full scope of the claimed invention. To succeed, Defendants must show by clear and convincing evidence that the '284 patent does not contain a sufficiently full and clear description of the claimed invention.

To be sufficiently full and clear, the description must contain enough information to have allowed a person having ordinary skill in the field of technology of the patent to make and use the claimed invention at the time the patent application was filed without undue experimentation. This is known as the "enablement" requirement.

In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

(1) the time and cost of any necessary experimentation;

(2) how routine any necessary experimentation is in the field of [wireless communications][base stations][98];

(3) whether the patent discloses specific working examples of the claimed invention;

(4) the amount of guidance presented in the patent;

(5) the nature and predictability of the field of [wireless communications][base stations][99];

---

[98] **Barkan's position**: Barkan's proposed description of the technical field is the same that the parties agreed to in the context of the prosecution bar provision in the parties' joint Protective Order. *See* Dkt. 64, ¶ 11. **Defendants' position**: Barkan's proposed description of the technical field is misleading. As a whole, this case is about a specific type of femtocell operating in and interacting with a cellular network and very specific backend hardware components (the "coordination center"), thus the field is properly described as the "field of wireless communications."

[99] **Barkan's position**: Barkan's proposed description of the technical field is the same that the parties agreed to in the context of the prosecution bar provision in the parties' joint Protective Order. *See* Dkt. 64, ¶ 11. **Defendants' position**: Barkan's proposed description of the technical field is misleading. As a whole, this case is about a specific type of femtocell operating in and interacting with a cellular network and very specific backend hardware components (the "coordination center"), thus the field is properly described as the "field of wireless communications."

(6) the level of ordinary skill in the field of [wireless communications][base stations][100]; and

(7) the scope of the claimed invention.

No one or more of these factors is alone dispositive. Rather, you must make your decision whether or not the degree of experimentation required is undue based upon all of the evidence presented to you. You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the application, a person of ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

---

[100] **Barkan's position**: Barkan's proposed description of the technical field is the same that the parties agreed to in the context of the prosecution bar provision in the parties' joint Protective Order. *See* Dkt. 64, ¶ 11. **Defendants' position**: Barkan's proposed description of the technical field is misleading. As a whole, this case is about a specific type of femtocell operating in and interacting with a cellular network and very specific backend hardware components (the "coordination center"), thus the field is properly described as the "field of wireless communications."

K.     Date of Invention[101]

[I have referenced the date of the invention several times in these instructions. A patent's priority date or date of invention is used to determine the pool of potential prior art. [102]

[Barkan contends that the date of invention for the asserted claims of the '284 Patent is no later than June 5, 1999. [103]] [Defendants contend that the date of invention for the asserted claims of the '284 Patent is no earlier than August 12, 1999.][104]

---

[101] **Barkan's position:** Barkan's response to Defendants' MIL #5 explains why the jury must determine the date of invention and highlights Barkan's supporting evidence.  Defendants are dead wrong that "Barkan has presented no evidence to support [its] alleged earlier conception date." Barkan has presented the testimony of Dr. Elad Barkan—the inventor of the Asserted Patents—and *corroborating* documentary evidence.  Barkan has produced and relied on, for example, a document dated June 5, 1999, that sets out Dr. Barkan's claimed inventions.  If the Court denies Defendants' motion *in limine*, Barkan's proposed instructions should be included.  **Defendants' Objection**: Barkan's instruction does not identify any factual issues to be decided that necessitate an instruction as to date of invention, and is thus unnecessary and likely to confuse the jury. Barkan has presented no evidence to support their alleged earlier conception date and has provided no expert testimony to support its allegation of an earlier conception date. *See* Dkt. 190 (Defendants' MILs) at MIL 5, pg. 4; *see also Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1334 (Fed. Cir. 2011) (holding that conception must be proven with "corroborating evidence" because of the "concern that inventors testifying in patent infringement cases would be tempted to remember facts favorable to their case by the lure of protecting their patent or defeating another's patent"); *Blitzsafe Tex., LLC v. Honda Motor Co.,* No. 2:15-cv-1274-JRG-RSP, Dkt. 390 at 4 (E.D. Tex. Jan. 13, 2017) (excluding reference to alleged earlier priority date). As such, this instruction should not be included. To the extent the Court believes this instruction is necessary, Defendants' have proposed some edits to Barkan's language.

[102] Trial Transcript at 30:10-13, *Rembrandt*, *supra* note 44 (modified).

[103] Barkan contends in the alternative that the date of invention for the asserted claims of the '284 Patent is no later than August 12, 1999. Barkan reserves the right to propose an instruction on this date.

[104] To the extent the Court believes and instruction is necessary, Defendants' proposes that the "date of invention" should be the priority date listed on the face of the patents.

[Barkan contends that the date of invention for the asserted claims of the '312 Patent is no later than June 5, 1999.[105]] [Defendants contend that the date of invention for the asserted claims of the '312 Patent is no earlier than August 12, 1999.][106]

[Barkan contends that the date of invention for the asserted claims of the '638 Patent is no later than June 5, 1999.[107]] [Defendants contend that the date of invention for the asserted claims of the '638 Patent is no earlier than August 12, 1999.][108]

You must determine the date of invention for the asserted claims of the '284 Patent, the '312 Patent, and the '638 Patent.[109]

The date of invention is either when the invention was reduced to practice or when conceived, provided the inventor(s) were diligent in reducing the invention to practice. Diligence means working continuously, though not necessarily every day.[110]

Conception is the mental part of an inventive act, *i.e.*, the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work. Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the

---

[105] Barkan contends in the alternative that the date of invention for the asserted claims of the '312 Patent is no later than August 12, 1999. Barkan reserves the right to propose an instruction on this date.

[106] To the extent the Court believes and instruction is necessary, Defendants' proposes that the "date of invention" should be the priority date listed on the face of the patents.

[107] Barkan contends in the alternative that the date of invention for the asserted claims of the '638 Patent is no later than August 12, 1999. Barkan reserves the right to propose an instruction on this date.

[108] To the extent the Court believes and instruction is necessary, Defendants' proposes that the "date of invention" should be the priority date listed on the face of the patents.

[109] Federal Circuit Bar Association Model Patent Jury Instructions § 4.3a-1 (2016) (modified).

[110] *Id.*

technology, he or she would be able to reduce the invention to practice without undue research or experimentation. This requirement does not mean that the inventor has to have a prototype built, or actually explained her or his invention to another person. But, there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.[111]

A claimed invention is "reduced to practice" when it has been constructed or used or tested sufficiently to show that it will work for its intended purpose or when the inventor files a patent application. An invention may also be reduced to practice even if the inventor has not made or tested a prototype of the invention if it has been fully described in a filed patent application.[112] [Both types of reduction to practice require that the subject matter of the alleged invention contain all limitations of the asserted claims.[113]]

In this case, the '284 Patent is entitled to a date of invention at least as early as the filing of the application on which the patent is based, that is, August 12, 1999. You may find that the '284 Patent is entitled to an earlier date of invention if Barkan proves by a preponderance of the evidence that the claimed invention was reduced to practice or conceived on a date earlier than August 12, 1999, and the inventor of the invention was diligent in reducing the invention to practice[114][, including all limitations of the asserted claims].[115]

---

[111] *Id.*

[112] *Id.*

[113] *In re Steed*, 802 F.3d 1311, 1318 (Fed. Cir. 2015). **Barkan's objection:** Barkan objects to this language as going beyond the instructions this Court has given juries in other cases on the topic.
[114] Trial Transcript at 47:19-48:3, *Cassidian Commc'ns, Inc. v. microdata GIS, Inc.*, Case. 12-cv-162-JRG (E.D. Tex. Dec. 16, 2013), Dkt. 165 (modified).
[115] *In re Steed*, 802 F.3d 1311, 1318 (Fed. Cir. 2015). **Barkan's objection:** Barkan objects to this language as going beyond the instructions this Court has given juries in other cases on the topic.

If you find that Barkan is entitled to a date of invention before the earliest date of a reference that is alleged against any claim of the '284 Patent, that asserted reference is not prior art and cannot be considered for purposes of deciding the invalidity of the claim.[116]

In this case, both the '312 Patent and '638 Patents are continuations of the application that matured into the '284 Patent and are entitled to a date of invention at least as early as the filing of the application of the '284 Patent, that is, August 12, 1999. You may find that the '312 and '638 Patents are entitled to an earlier date of invention if Barkan proves by a preponderance of the evidence that the claimed invention was reduced to practice or conceived on a date earlier than August 12, 1999, and the inventor of the invention was diligent in reducing the invention to practice[117][, including all limitations of the asserted claims].[118]

If you find that Barkan is entitled to a date of invention before the earliest date of a reference that is alleged against any claim of the '312 Patent or '638 Patent, that asserted reference is not prior art and cannot be considered for purposes of deciding the invalidity of the claim.[119]]

## L.   Damages—Generally

If you find that T-Mobile and Nokia have infringed any valid claim of the asserted patents and such claim is not invalid, then you must consider what amount of damages to award to Barkan.[120]

---

[116] Trial Transcript at 48:4-9, *Cassidian Commc'ns, Inc. v. microdata GIS, Inc.*, Case. 12-cv-162-JRG (E.D. Tex. Dec. 16, 2013), Dkt. 165 (modified).
[117] *Id.* at 47:19-48:3 (modified).
[118] *In re Steed*, 802 F.3d 1311, 1318 (Fed. Cir. 2015).  **Barkan's objection:** Barkan objects to this language as going beyond the instructions this Court has given juries in other cases on the topic.
[119] Trial Transcript at 48:4-9, *Cassidian Commc'ns, Inc. v. microdata GIS, Inc.*, Case. 12-cv-162-JRG (E.D. Tex. Dec. 16, 2013), Dkt. 165 (modified).
[120] Trial Transcript at 34:24-35:1, *Rembrandt*, *supra* note 44 (modified).

I'll now instruct you about the measure of damages. By instructing you on damages, I'm not suggesting which party should win this case on any issue.[121]

A damages award should put Barkan in approximately the same financial position that it would have been in had the infringement not occurred, and must be at least what Barkan would have received had it been paid a reasonable royalty for the use of its patent. The damages you are to award, if any, are meant to compensate Barkan and not to punish T-Mobile and Nokia. You may not include in your award any additional amount as a fine or penalty above what is necessary to fully compensate the patent-holder for the infringement.[122]

Barkan has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Barkan establishes that it more likely than not suffered.[123]

While the patent owner is not required to prove damages with mathematical precision, it must prove them with reasonable certainty.[124] Patent owner is not entitled to damages that are remote or speculative.

A patent owner may assert an expired patent for infringement, but if a patent owner asserts an expired patent and the patent is found to be infringed and not invalid, the patent owner is only entitled to damages during the time that the patent is unexpired.

---

[121] *Id.* at 35:2-5.
[122] *Id.* at 35:6-11, 36:19-22 (modified).
[123] *Id.* at 35:12-17 (modified).
[124] *Id.* at 35:18-20.

### M.      Reasonable Royalty

In this case, Barkan seeks a reasonable royalty. A reasonable royalty is defined as the amount of money a willing patent owner and a willing prospective licensee would have agreed upon right before the infringement began for a license to make, use, or sell the invention.[125]

The patent laws specifically provide that damages for infringement may not be less than a reasonable royalty. At the same time, your damages are not meant to punish T-Mobile and Nokia.[126]

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place between them at a time prior to when the infringement first began.[127]

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time and had they acted reasonably in their negotiations.[128]

In determining this, you must assume that both parties believed that the patent was valid and infringed and the patent holder and infringer were willing to enter into an agreement.[129]

The parties agree that the hypothetical negotiation would have occurred in or about November 2015 and would have been between Barkan, on the one hand, and Nokia and T-Mobile on the other.

---

[125] *Id.* at 56:4-9 (modified).
[126] *Id.* at 56:20-23 (modified).
[127] *Id.* at 56:24-57:5.
[128] *Id.* at 57:6-10.
[129] *Id.* at 57:11-14.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.[130]

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)     The royalties received by Barkan for the licensing of the patents-in-suit, proving or tending to prove an established royalty.

(2)     Royalties paid by the licensee for the use of other patents comparable to the patents-in-suit.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     The licensor's established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

---

[130] *Id.* at 57:19-23

(6)     The effect of selling the patented invention in promoting sales of other products of the licensee.

(7)     The duration of the patent and the term of the license.

(8)     The profitability of the patented invention and whether it is commercially successful or popular.

(9)     The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)    The extent of the infringer's use of the patented invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a licensor and a licensee would have agreed upon if both sides had both been reasonably and voluntarily trying to reach an agreement; that is, the amount which an accused infringer would have

54

been willing to pay as a royalty and yet be able to make a reasonable profit

and such amount would have been acceptable to a patent owner if it would

have been willing to create a license.[131]

No one factor is dispositive, and you can and should consider the evidence that has been

presented to you in this case on each of these factors. You may also consider any other factors

which in your mind would have increased or decreased the royalty the infringer would have been

willing to pay and the patent holder would have been willing to accept, acting as normally prudent

business people.[132]

The final factor establishes the framework which you should use in determining a

reasonable royalty; that is, the payment that would have resulted from a negotiation between the

patent holder and the infringer taking place at a time prior to when the infringement began.[133]

Comparable license agreements are one factor mentioned that may inform your decision as

to the proper amount and form of the reasonable royalty award, similar to the way in which the

value of a house is determined relative to comparable houses sold in the same neighborhood.[134]

Whether a license agreement is comparable to the license under the hypothetical license

scenario depends on many factors, such as whether they involve comparable technologies,

comparable economic circumstances, comparable structure, and comparable scope. If there are

differences between a license agreement and the hypothetical license, you must take those into

account when you make your reasonable royalty determination.[135]

---

[131] Trial Transcript at 58:6-60:23, *Cassidian Commc'ns, Inc. v. microdata GIS, Inc.*, Case. 12-cv-162-JRG (E.D. Tex. Dec. 16, 2013), Dkt. 165 (modified).
[132] *Id.* at 60:24-61:6.
[133] *Id.* at 61:7-12.
[134] *See* FBCA, Model Patent Jury Instruction § 5.9, May 2020, available at https://fedcirbar.org/IntegralSource/Model-Patent-Jury-Instructions.
[135] *Id.*

[The hypothetical license is deemed to be a voluntary agreement. When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties to a lawsuit and whether the license agreement was a settlement influenced by a desire to avoid further litigation.][136] [The reasonable royalty that you determine must be a royalty that would have resulted from the hypothetical negotiation and not simply a royalty that either party would have preferred.][137]

In determining a reasonable royalty, you may also consider whether T-Mobile and Nokia had commercially acceptable non-infringing alternatives to taking a license from Barkan that were available at the time of the hypothetical negotiation and whether that would have affected the reasonable royalty the parties would have agreed upon. A non-infringing alternative is a way of providing the same or comparable functionality or achieving the same or a comparable result that does not require using the asserted claims.[138] You may compare the patented invention to non-infringing alternatives to determine the value of the patented invention, including the utility and

---

[136] **Barkan's position**: the licenses at issue in this case are litigation settlements. This instruction is thus necessary to properly frame the comparability of such licenses. The source is: FBCA, Model Patent Jury Instruction § 5.9, May 2020, available at https://fedcirbar.org/IntegralSource/Model-Patent-Jury-Instructions. **Defendants' position**: This instruction is unnecessary and misleading. The fact that the licenses may be litigation settlements is something that can be described and discussed by the experts. There is no need for the Court to give the jury an instruction on this point. This instruction could mislead the jury into thinking that they must treat a settlement license differently and must adjust the rates in a settlement license when that is **not** the case. Further this Court has not given this instruction in recent cases, but rather has given Defendants' proposed instruction in the following sentence. *See* Note 140 below.

[137] **Barkan's position**: this instruction is unnecessary in light of the instructions instructing the jury how to determine the reasonable royalty. **Defendants' position**: This instruction has been used by this Court multiple times before, and is a correct statement of the law. Trial Transcript, at 988:7–10, *Optis Wireless Technology, LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG (E.D. Tex. Aug. 12, 2020), Dkt. 520; Trial Transcript at 27:24–7, *PPS Data, LLC v. Jack Henry & Associates, Inc.*, No. 2:18-cv-00007-JRG, Dkt. 175 (E.D. Tex. Sep. 13, 2019); Trial Transcript at 27:14–17, *United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv-00245-JRG, Dkt. 335 (E.D. Tex. Nov. 7, 2019).

[138] Trial Transcript at 41:3-8, *Rembrandt*, *supra* note 44 (modified).

advantages of the patent over the old modes or devices, if any, that had been used to achieve similar results.

[The amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or Defendants' respective size or market position.][139]

[Now, the law requires that any damages awarded to Barkan correspond to the value of the alleged inventions within the accused products, as distinct from other unpatented features of the accused product or other factors such as marketing or advertising or Defendants' size or market position. This is particularly true where the accused product has multiple features and multiple components not covered by the patent or where the accused product works in conjunction with other non-patented items.][140]

In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable to the patented technology. In other words, the royalty base must be closely tied to the invention. It is

---

[139] **Barkan's position**: the parties' experts dispute whether the Patents-in-Suit claim the entirety of the Accused Products and whether the Accused Products include unpatented features and components. Defendants' proposed instruction, however, suggests that the "alleged inventions" are "within the accused products" and that the accused products have "multiple features and multiple components not covered by the patent." The instruction puts a thumb on the scale for Defendants and is likely to confuse and mislead the jury. The Court should instead use the neutral statement Barkan is proposing from the American Intellectual Property Law Association Model Patent Jury Instructions § 10.2.5.5 (2018). **Defendants' position**: Defendants' proposed instruction is directly based on previous instructions given by this Court. Barkan's instructions attempt to minimize the importance of apportionment, by ignoring the fact that the accused products have "multiple features and multiple components not covered by the [patents-in-suit]."

[140] **Barkan's position**: Barkan's position is set out in the preceding footnote. **Defendants' position**: This instruction is directly from recent jury instructions given by this Court, and is legally correct. *See e.g.*, Trial Transcript, at 988:11–20, *Optis Wireless Technology, LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG (E.D. Tex. Aug. 12, 2020); Trial Transcript at 27:18–29:4, *United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv-00245-JRG, Dkt. 335 (E.D. Tex. Nov. 7, 2019).

not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward by applying a higher royalty rate. Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.[141]

## N.    When Damages Begin[142]

[In determining the amount of damages, you must determine when the damages began. The parties do not agree on that date, and it is up to you to determine what that date is.[143]

You must first determine if the "marking" requirement applies to this case.[144] "Marking" means placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all of the products that include the patented invention.[145]

Defendants bear an initial burden of identifying products made, sold, or offered for sale in the United States by Barkan or a third-party under license from Barkan that they believe include a patent invention.[146] If you find that Defendants have not met their burden to identify products

---

[141] American Intellectual Property Law Association Model Patent Jury Instructions § 10.2.5.5 (2018).

[142] The parties disagree on the nature of the marking instructions and thus propose entirely competing provisions. Furthermore, this subsection of the jury instructions is dependent on the Court's ruling on Defendants' Motion for Partial Summary Judgment of No Pre-Suit Damages Based on Plaintiff's Failure to Comply with 35 U.S.C. § 287 (Dkts. 124).

[143] *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001).

[144] *Id.*

[145] 35 U.S.C. § 287.

[146] *See Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017) ("We hold an alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287.  To be clear, this is a low bar.  The alleged infringer need only put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent."); *Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, No. 814CV01352JLSKES, 2019 WL 4390573, at *2 (C.D. Cal. June 26, 2019) ("The parties dispute whether, as part of this burden of production, Kingston must produce evidence that the identified

made, sold, or offered for sale in the United States by Barkan or it licensees that they believe include a patent invention, then the damages period begins six years before the date that Barkan filed its respective complaints against T-Mobile and Nokia in this case alleging patent infringement.[147]  Therefore, damages that you may award Barkan begin on February 2, 2015 for T-Mobile, and February 4, 2015 for Nokia.

If you find that Defendants have not met their burden to identify products made, sold, or offered for sale in the United States by Barkan or it licensees that they believe include a patent invention, then the burden shifts to Barkan to prove that the "marking" requirement does not apply.[148]

The "marking" requirement does not apply if the product does not include the patented invention.[149] So, if you find that neither Barkan nor its licensees sold a product in the United States that practiced a patented invention, then the damages period begins six years before the date that Barkan filed its respective complaints against T-Mobile and Nokia in this case alleging patent infringement.[150]  Therefore, damages that you may award Barkan begin on February 2, 2015 for T-Mobile, and February 4, 2015 for Nokia.

---

products were sold or offered for sale in the United States.  The Court concludes that it must. . . . To be sure, *Arctic Cat* provides that the burden is a low bar, but Kingston has failed to produce any admissible evidence that identifies specific products that it believes should have been marked and were sold or offered for sale in the United States." (cleaned up)).

[147] 35 U.S.C. §§ 286, 287.

[148] *See Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017).

[149] *Wine Ry. Appliance Co. v. Enter. Ry. Equip. Co.*, 297 U.S. 387, 398 (1936) (construing predecessor statute), *see also Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1219 (Fed. Cir. 2002), *overruled on other grounds by Phillips v. AWH Corp.*, 415 U.S. 1303 (Fed. Cir. 2005) (recognizing applicability to § 287(a)).

[150] 35 U.S.C. §§ 286, 287.

If you find that Barkan's licensees sold a product in the United States that practiced the patented invention, then where (as here) a third-party licensee and not Barkan itself was required to mark a product, you should apply a "rule of reason" approach to determine whether the marking requirement has been satisfied.[151] This rule of reason analysis asks whether Barkan made reasonable efforts to ensure compliance with the marking requirements.[152] Substantial compliance by a third party licensee will satisfy the marking requirement.[153]

If you find that Barkan made reasonable efforts to ensure that substantially all of the products sold by its licensees complied with the marking requirement, then the damages period begins six years before the date that Barkan filed its respective complaints against T-Mobile and Nokia in this case alleging patent infringement.[154] Therefore, damages that you may award Barkan begin on February 2, 2015 for T-Mobile, and February 4, 2015 for Nokia.

If you find that the "marking" requirement applies and that Barkan did not make reasonable efforts to ensure that substantially all of the products sold by its licensees complied with the marking requirement, the damages period runs from February 2, 2015 for T-Mobile, and February 4, 2015 for Nokia to July 2019, for both, when Barkan's licensees Samsung and Verizon began selling unmarked products.[155] The damages period then begins again on February 2, 2021 as to

---

[151] *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996); *see Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1374 (Fed. Cir. 2010).
[152] *Id.*
[153] *Id.*
[154] 35 U.S.C. §§ 286, 287.
[155] *WiAv Solutions LLC, v. Motorola, Inc.*, 732 F. Supp. 2d 634 (E.D. Va. 2010); *In re Elonex Phase II Power Mgmt. Litig.*, No. 01-082 GMS, 2002 WL 242363, at *1 (D. Del. Feb. 20, 2002), *amended*, No. C.A. 01-082 GMS, 2002 WL 433614 (D. Del. Mar. 20, 2002); *Wokas v. Dresser Indus., Inc.*, 978 F. Supp. 839 (N.D. Ind. 1997); *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, No. 14-CV-6544 (KAM) (GRB), 2018 WL 1525686 (E.D.N.Y. Mar. 27, 2018).

T-Mobile and on February 4, 2021 as to Nokia, when the Barkan's complaints in this case were filed.][156]

[If you find that either Barkan or a party to which Barkan has licensed the asserted patents made, sold, or offered for sale within the United States, or imported into the United States, products that use or practice the asserted patents, then damages for any infringement of the asserted patents cannot begin until the date that Barkan first notified Defendants of its claim for patent infringement.[157] Defendants bear the initial burden to articulate products made, sold, offered for sale, or imported by Barkan or a licensee of the asserted patents that Defendants believe practice the asserted patents.[158] Defendants need not prove that the identified products in fact practice the asserted patents.[159]

If you find Defendants have met their initial burden, Barkan must prove that either: (1) the products identified by Defendants do not in fact practice the asserted patents; (2) the identified

---

[156] **Barkan's position**: Barkan disagrees that its instructions misstate the law. The authority cited in support of Barkan's instructions confirms as much. **Defendants' position**: Barkan misstates the law in its proposed instructions. For the reasons outlined in Defendants' Motion for Partial Summary Judgment of No Pre-Suit Damages Based on Plaintiff's Failure to Comply with 35 U.S.C. § 287 (Dkts. 124 & 155), the law is clear that a failure to comply with 35 U.S.C. § 287 is a complete bar of all pre-suit damages. *Team Worldwide Corp. v. Acad., Ltd.*, No. 2:19-cv-00092-JRG-RSP, 2021 U.S. Dist. LEXIS 88505, at *5 (E.D. Tex. May 10, 2021) ("The R&R precludes all pre-suit damages prior to the date of actual notice, as is consistent with Federal Circuit precedent.")

[157] 35 U.S.C. § 287(a); *see also Team Worldwide Corp. v. Acad., Ltd.*, No. 2:19-cv-00092-JRG-RSP, 2021 U.S. Dist. LEXIS 88505, at *5 (E.D. Tex. May 10, 2021) ("The R&R precludes all pre-suit damages prior to the date of actual notice, as is consistent with Federal Circuit precedent.").

[158] *See Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017) ("We hold an alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287. To be clear, this is a low bar. The alleged infringer need only put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent.")

[159] *Id.* at 1367-68; *see also Lubby Holdings LLC v. Chung,* No. 2019-2286, 2021 U.S. App. LEXIS 26345, at *9 (Fed. Cir. Sept. 1, 2021)

products were not made, sold, or offered for sale by Barkan or the licensee within the United States, or imported into the United States, after the asserted patents issued and prior to the filing of this lawsuit on February 2, 2021; or (3) Barkan notified Defendants of Defendants' alleged infringement of the asserted patents either through complying with the marking requirements or providing actual notice.[160]

You must first consider whether Barkan has proven either element (1) or (2). If you find Barkan has met its burden on either or both of these elements, you may award Barkan damages from the date you find that Defendants first infringed the asserted patents, though no earlier than November 2015 for the '284 Patent and the '312 Patent and July 12, 2016 for the '638 Patent.[161]

If you find Barkan has not proven either of elements (1) or (2), Barkan must prove that it provided notice to Defendants of Defendants' alleged infringement of the asserted patents before filing this lawsuit.[162] The first way Barkan can provide notice is through marking the products identified by Defendants.[163] Marking requires Barkan to prove that it made reasonable efforts to ensure that its licensee(s) fixed to substantially all of the products using or practicing the asserted

---

[160] 2018 AIPLA Model Patent Jury Instructions 10.1.2; 35 U.S.C. § 287(a); *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.* (Arctic Cat II), 950 F.3d 860, 864 (Fed. Cir. 2020); *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.* (Arctic Cat I), 876 F.3d 1350, 1368 (Fed. Cir. 2017); *Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373–74 (Fed. Cir. 2010); *Gart v. Logitech, Inc.,* 254 F.3d 1334, 1345 (Fed. Cir. 2001); *Lans v. Digital Equip. Corp.,* 252 F.3d 1320, 1327–28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.,* 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1111 (Fed. Cir. 1996); *Amsted Indus., Inc. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 184–87 (Fed. Cir. 1994); *Devices for Med., Inc. v. Boehl,* 822 F.2d 1062, 1066 (Fed. Cir. 1987); *see also Team Worldwide Corp. v. Acad., Ltd.*, No. 2:19-cv-00092-JRG-RSP, 2021 U.S. Dist. LEXIS 88505, at *5 (E.D. Tex. May 10, 2021).
[161] 35 U.S.C. § 286.
[162] *See Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017); *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.* (Arctic Cat II), 950 F.3d 860, 864 (Fed. Cir. 2020); 2018 AIPLA Model Patent Jury Instructions 10.1.2.
[163] 35 U.S.C. § 287(a); 2018 AIPLA Model Patent Jury Instructions 10.1.2.

patents, or on the labeling of such products, the word "patent" or the abbreviation "pat" with the number of the relevant patent.[164] Alternatively, Barkan must prove that it made reasonable efforts to ensure that its licensee(s) fixed to substantially all such products or product labels "patent" or "pat" and a free internet address where there is a posting that connects the product with the patent number.[165] Whether Barkan made reasonable efforts to ensure its licensees complied with these marking requirements is a "rule of reason" inquiry and should be viewed through the lens of encouraging patentees to give public notice that a product is patented to help avoid innocent infringement.[166] If Barkan did not at least make reasonable efforts to ensure that licensees of the asserted patents marked substantially all of any products using or practicing the asserted patents, then Barkan did not provide notice to Defendants through marking.[167] If you find Barkan provided notice to Defendants through marking, you may award Barkan damages from each Defendant from the date you find that Defendant first infringed the asserted patents, though no earlier than November 2015 for the '284 Patent and the '312 Patent and July 12, 2016 for the '638 Patent.

If you find that Barkan did not provide notice to Defendants through marking, the damages period cannot begin until you find Barkan provided actual notice to Defendants of Defendants' alleged infringement of the asserted patents.[168] Actual notice requires Barkan to notify Defendants

---

[164] 2018 AIPLA Model Patent Jury Instructions 10.1.2; *Devices for Med., Inc. v. Boehl,* 822 F.2d 1062, 1066 (Fed. Cir. 1987)

[165] 2018 AIPLA Model Patent Jury Instructions 10.1.2.

[166] *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996); *see Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1374 (Fed. Cir. 2010).

[167] *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996); *see Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1374 (Fed. Cir. 2010).

[168] *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 950 F.3d 860, 864 (Fed. Cir. 2020); *see also Gart v. Logitech, Inc.*, 254 F.3d 1334, 1346 (Fed. Cir. 2001); *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327–28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001); 2018 AIPLA Model Patent Jury Instructions 10.1.2.

with a specific claim that the accused technology allegedly infringed the asserted patents.[169] Notice to Defendants of the existence of the asserted patents or Barkan's ownership of the patents does not provide actual notice of Defendants' alleged infringement of those patents.[170] Nor can Defendants be found to have notice of its alleged infringement through its actions, alone.[171] Rather, you must find that Barkan provided notice to Defendants.[172] This type of notice starts the damages period from the date Defendants received the notice.[173]

If you find that Barkan, before filing this lawsuit, did not provide notice to Defendants of Defendants' alleged infringement either by complying with the marking requirements or providing actual notice to Defendants, then Barkan can only recover damages for infringement of the '284 Patent after it filed its Complaint on February 2, 2021 (as to T-Mobile) and on February 4, 2021 (as to Nokia).][174]

---

[169] *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 950 F.3d 860, 864 (Fed. Cir. 2020); *see also Gart v. Logitech, Inc.*, 254 F.3d 1334, 1346 (Fed. Cir. 2001); *Lans v. Digital Equip. Corp.,* 252 F.3d 1320, 1327–28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.,* 246 F.3d 1336, 1353 (Fed. Cir. 2001); 2018 AIPLA Model Patent Jury Instructions 10.1.2.

[170] *Lans v. Digital Equip. Corp.,* 252 F.3d 1320, 1327–28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.,* 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Devices for Med., Inc. v. Boehl,* 822 F.2d 1062, 1066 (Fed. Cir. 1987); 2018 AIPLA Model Patent Jury Instructions 10.1.2

[171] *Lans v. Digital Equip. Corp.,* 252 F.3d 1320, 1327–28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.,* 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Devices for Med., Inc. v. Boehl,* 822 F.2d 1062, 1066 (Fed. Cir. 1987); 2018 AIPLA Model Patent Jury Instructions 10.1.2

[172] *Lans v. Digital Equip. Corp.,* 252 F.3d 1320, 1327–28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.,* 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Devices for Med., Inc. v. Boehl,* 822 F.2d 1062, 1066 (Fed. Cir. 1987); 2018 AIPLA Model Patent Jury Instructions 10.1.2

[173] *Lans v. Digital Equip. Corp.,* 252 F.3d 1320, 1327–28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.,* 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Devices for Med., Inc. v. Boehl,* 822 F.2d 1062, 1066 (Fed. Cir. 1987); 2018 AIPLA Model Patent Jury Instructions 10.1.2

[174] 2018 AIPLA Model Patent Jury Instructions 10.1.2; 35 U.S.C. § 287(a); *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.* (Arctic Cat II), 950 F.3d 860, 864 (Fed. Cir. 2020); *Arctic*

### O.    Instructions on Deliberation[175]

All right. Ladies and gentlemen, I'd now like to provide you with just a few final instructions before you retire and begin your deliberations.

Again, you must perform your duties as jurors without bias or prejudice to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion.

All parties expect that you will carefully and impartially consider all the evidence, follow the law as I have given it to you, and reach a just verdict, regardless of the consequences.

Answer each question in the verdict form from the facts as you find them to be. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You should consider and decide this case as a dispute between parties of equal standing in the community, of equal worth, and holding the same or similar stations in life. This is true in patent cases between corporations, partnerships, and individuals.

A patent owner is entitled to protect its patent rights under the United States Constitution. This includes bringing a suit in a United States District Court for money damages for infringement.

---

*Cat Inc. v. Bombardier Recreational Prods. Inc.* (Arctic Cat I), 876 F.3d 1350, 1368 (Fed. Cir. 2017); *Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373–74 (Fed. Cir. 2010); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001); *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327–28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1111 (Fed. Cir. 1996); *Amsted Indus., Inc. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 184–87 (Fed. Cir. 1994); *Devices for Med., Inc. v. Boehl,* 822 F.2d 1062, 1066 (Fed. Cir. 1987); *see also Team Worldwide Corp. v. Acad., Ltd.*, No. 2:19-cv-00092-JRG-RSP, 2021 U.S. Dist. LEXIS 88505, at *5 (E.D. Tex. May 10, 2021) ("The R&R precludes all pre-suit damages prior to the date of actual notice, as is consistent with Federal Circuit precedent.")

[175] Trial Transcript at 97:9-101:9, *Rembrandt, supra* note 44.

The law recognizes no distinction among types of parties. All corporations, partnerships, and other organizations stand equal before the law, regardless of size or who owns them, and they are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you will each have a copy of this charge to take with you.

If you desire to review any of the exhibits which the Court has admitted into evidence, you should advise me by a written note delivered to the court security officer, and I will then send you that exhibit or those exhibits which you've requested.

Certain documents that you were shown during the trial are demonstratives. Demonstratives are a party's description, picture, or model to describe something involved in the trial.

If your recollection of the evidence differs from the demonstrative, rely on your recollection. Demonstratives are not evidence. However, a witness's testimony that references the demonstrative is evidence.

Once you retire, you should first select your foreperson and then conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.

After you have reached your verdict, your foreperson will fill in the blanks on the verdict form, reflecting your unanimous answers to the questions on that form. The foreperson will then date the verdict form and sign it and then deliver it to the court security officer.

Contrary to my earlier instructions, which I gave you repeatedly during the trial, it is now your sworn duty to discuss the case with one another in an effort to reach an agreement, if you can do so.

Each of you must decide the case for yourself, but only after full consideration of all the evidence with the other members of the jury.

While you are discussing the case among yourselves, don't hesitate to re-examine your own opinions or change your mind if you become convinced that you were wrong. However, don't give up your honest beliefs solely because others might think differently or to finish the case.

Do not reveal your answer until such time as you are discharged, unless otherwise directed by me. And you must never disclose to anyone, not even me, your numerical division on any question.

Any notes that you've taken during the trial are aids to memory only. If your memory should differ from your notes, then you should rely on your memory and not your notes. The notes are not evidence.

A juror who has not taken notes should rely on his or her own independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time during your deliberations, please give a written message or question to the court security officer who will bring it to me. I will then respond as promptly as possible in writing or by having you brought back into the courtroom so that I can address you orally.

I will always first disclose to the attorneys in the case your question and my response before I answer your question.

After you have reached a verdict and I have discharged you, you are not required to talk with anyone about the issues in this case unless I order otherwise.

However, you will then be free to discuss the case with anyone, if you choose to do so.

Whether or not you discuss your service as jurors after you have been discharged is strictly up to you and no one else.